IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOCELYN L. PENNELLA DOYLE,

    *Plaintiff,*

    v.

DENIS MCDONOUGH,
SECRETARY, THE DEPARTMENT
OF VETERAN AFFAIRS *et al.*,

    *Defendants.*

Civil Action No. ELH-20-3478

### MEMORANDUM OPINION

The self-represented plaintiff, Jocelyn L. Pennella Doyle, filed an employment discrimination and retaliation action arising out of her former employment in West Virginia at the Department of Veterans Affairs (the "VA," the "Department," or the "Agency"). ECF 1. She initially sued Robert Wilke, who was then Secretary of the Department;[1] Administrative Judge Mark Syska ("Judge Syska") of the Merit Systems Protection Board ("MSPB"); and Timothy Cooke, "VA Medical Director." *Id.* With her initial filing, plaintiff included a copy of a decision issued by the Equal Employment Opportunity Commission ("EEOC") Office of Federal Operations ("OFO"). *See Stacie D. v. Wilkie,* Petition No. 2020004671, 2020 WL 6710397 (2020); ECF 1-2. There, she was denied relief as to her discrimination claims.[2]

---

[1] Denis McDonough was confirmed by the Senate to serve at the head of the Department of Veterans Affairs on February 8, 2021. *See* Clare Foran & Ted Barrett, *Senate Confirms Denis McDonough as Secretary of Veterans Affairs*, CNN, Feb. 8, 2021, https://cnn.it/3BHnVeh. Pursuant to Fed. R. Civ. P. 25(d), the government seeks to substitute Secretary McDonough as the defendant. *See* ECF 29 at 1 n.1. The case caption shall be amended to reflect the substitution.

[2] Plaintiff was "randomly assigned a pseudonym" in the EEOC OFO proceedings, which "replace[d] [plaintiff's] name" in the decision. *Stacie D.*, Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 1 n.1.

Thereafter, with leave of court (ECF 15), plaintiff filed a rambling, 55-page Amended Complaint (ECF 16), joining seven new defendants, all of whom are Agency employees. They include Denis Tim Sullivan, Kent E. McClure, Alice Torres, Dr. Michael Zapor, Vanessa Parsons, and Sharon Self (collectively with Timothy Cooke, the "Individual Defendants"). ECF 16 at 1. In addition, the Amended Complaint adds Kathy Fiery as a defendant. She is an Agency employee who also serves as a representative of the National Association of Government Employees ("NAGE"). ECF 16 at 1, 45; *see* ECF 34-1 at 2.

Plaintiff challenges the rulings of Judge Syska, complaining, *inter alia*, that he erroneously affirmed her termination by the Agency (ECF 16 at 2), violated her rights "by de-consolidating" her individual action from her "Whistleblowing case," *id.* at 3, misapplied and misinterpreted the law, *id.*, and made several other errors that violated plaintiff's rights. *Id.* at 4-6. Therefore, she seeks to "Appeal the final 'AFFIRMED' decision of CASE #PH-0714-18-0483-I-1 March 19, 2019, from MSPB Judge Mark Syska, affirming the Department of Veteran Affairs" in regard to plaintiff's discrimination claims. *Id.* at 6. As to the Individual Defendants, she alleges multiple claims, including wrongful termination based on her gender, disability, religion, and as a whistleblower; failure to promote; harassment; retaliation; failure to accommodate her disability; hostile work environment. As to Fiery, plaintiff appears to allege that Fiery, in her capacity as a NAGE representative, breached her duty of fair representation. ECF 16 at 6; *see* the Civil Service Reform Act (the "CSRA"), 5 U.S.C. §§ 7101, *et seq.*

Plaintiff invokes various federal statutes: the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 *et seq.* (the "ADA"); Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). ECF 16 at 2. In her original suit, plaintiff also referenced the Whistleblower Protection

Enhancement Act of 1996 (the "WPA").  *See* ECF 1 at 4.  Although the WPA is not specifically mentioned in the Amended Complaint, plaintiff frequently references allegations pertaining to her status as a "whistleblower."  *See, e.g.*, ECF 16 at 2, 6, 28, 35, 53.

A host of motions are pending.  *See* ECF 22; ECF 23; ECF 29; ECF 34; ECF 27; ECF 40; ECF 41.  They are described, *infra*.

As an initial matter, the Agency and Fiery each filed motions seeking extensions of time to respond to the Amended Complaint.  ECF 18; ECF 20.  I granted both motions.  ECF 19; ECF 21.  But, I also gave plaintiff an opportunity to move to rescind either order as improvidently granted. ECF 19; ECF 21.  Plaintiff filed a timely motion objecting to these extensions.  ECF 23.

The Agency has filed a motion to dismiss for improper venue or, in the alternative, to transfer the case to the Northern District of West Virginia, pursuant to Fed. R. Civ. P. 12(b)(3). ECF 29.  It is supported by a memorandum (ECF 29-1) (collectively, the "Agency Motion") and an affidavit from an Agency official (ECF 29-2).  The Agency Motion also urges the Court to dismiss the case as to the Individual Defendants.  ECF 29-1 at 5.  Plaintiff responded.  ECF 31. The Agency has not replied, and the time to do so has expired.  *See* Local Rule 105.2(a).

Fiery filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), claiming lack of subject matter jurisdiction, and under Rule 12(b)(6), asserting failure to state a claim.  ECF 34.  The motion is supported by a memorandum of law.  ECF 34-1 (collectively, the "Fiery Motion").  In plaintiff's response to the Fiery Motion (ECF 38), plaintiff filed a supporting exhibit, which includes over 150 pages of emails between Ms. Doyle and various Agency officials and NAGE representatives. *See* ECF 38-1.  Fiery has replied.  ECF 39.

Plaintiff has also filed a renewed motion requesting appointment of counsel.  ECF 22.[3]  In addition, plaintiff has filed three motions that I construe as motions to amend the Complaint: a motion that appears to seek to add NAGE and its Deputy General Counsel, Sarah Suszczyk, as defendants (ECF 27); a motion to "attach Supplemental Exhibits" (ECF 40); and a motion that appears to object to further administrative hearings before the MSPB (ECF 41).  NAGE and Ms. Suszczyk oppose their joinder to this suit.  ECF 35.

The motions have been fully briefed and no hearing is necessary to resolve them. *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Fiery Motion.  In addition, I shall grant the Agency Motion as to the Individual Defendants and Judge Syska.  I shall also dismiss plaintiff's ADA claim against the VA.  Moreover, I shall deny all of plaintiff's motions.  And, I shall transfer the remainder of the case to the District Court for the Northern District of West Virginia.

## I.      Factual Background[4]

I incorporate by reference the factual background and procedural history set forth in my Order of February 9, 2021.  ECF 12.  I have also included facts as described in related legal proceedings: *Doyle v. Dep't of Veterans Affairs*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767 (March 19, 2019) ("*Doyle I*"), ECF 40-1 at 10-43; *Doyle v. Dep't of Veterans Affairs*, 855 F. App'x 753 (Fed. Cir. 2021); *Stacie D.*, Petition No. 2020004671, 2020 WL 6710397 and

---

[3] Plaintiff previously moved for appointment of counsel.  ECF 4. I denied the motion, without prejudice, finding that were no exceptional circumstances then existing that warranted appointment of counsel.  *See* ECF 12.

[4] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Therefore, in recounting the factual background, I rely on plaintiff's allegations, to the extent I can decipher them.

*Doyle v. Dep't of Veterans Affairs*, MPSB No. PH-1221-18-0012-W-3, 2019 WL 2745924 (June 29, 2019) ("*Doyle II*").[5]

On July 26, 2015, plaintiff was hired by the VA to work as a dental assistant in the Martinsburg, West Virginia office of the Veterans Health Administration. ECF 16 at 9. Ms. Doyle alleges that her supervisors and colleagues initially conferred "accolades and awards for [her] contributions." *Id.* at 7-8.

In December 2016, Ms. Doyle lodged a complaint with the MSPB, after the Department failed to promote her to a position for which she believed she was qualified. *Id.* at 10. This led to discussions with Fiery and Susan Anderson, another NAGE representative. *Id.*

Further, plaintiff alleges that on December 14, 2016, she made a "protected disclosure concerning a safety Risk to the Safety Officer Krista Bowen. . . ." *Id.* at 11. As described by the Federal Circuit, Ms. Doyle was concerned that "members of the dental clinic were removing used surgical razor blades and scalpels from medical tools with their fingers . . . ." *Doyle*, 855 F. App'x at 753. Plaintiff was particularly concerned because although "the department and its leadership" had knowledge "of the issue for six months," dental assistants continued to "remov[e] the blades with their fingers." *Id.*

According to plaintiff, she was thereafter "branded . . . as a troublemaker, specifically chastised . . . for making protected disclosures, and subjected . . . to retaliatory actions, including a less than deserved performance rating, placement under many investigations, reassignment away from clinical duties, discrimination, hostile environments, [and] unfair workloads." ECF 16 at 9. Ms. Doyle also alleges that her coworkers "created a hostile work environment" by taunting and

---

[5] Pursuant to Fed. R. Evid. 201, I may take judicial notice of docket entries, pleadings, and papers in other cases. *See Schultz v. Braga*, 290 F. Supp. 2d 637, 651 n. 8 (D. Md. 2003) (taking judicial notice of dockets in state court proceeding).

harassing plaintiff for making disclosures regarding the alleged hazardous practices. ECF 16 at 12. Moreover, Ms. Doyle contends that one of her supervisors, Stacy Moody, publicly expressed frustration that plaintiff had reported these alleged issues outside of her "chain of command." *Id.* And, plaintiff claims that another supervisor, Maureen Sowers, refused plaintiff sick leave "to care for [her] older daughter who had surgery . . . ." *Id.* at 11.

Ms. Doyle filed a complaint with the Office of Special Counsel ("OSC") on December 27, 2016, after attempting unsuccessfully to obtain help from Fiery and Ms. Anderson. *Id.* at 13. She claimed that she was experiencing retaliation for her whistleblowing activity. *Id.* at 13, 17-18.

Soon after, Ms. Doyle filed a complaint with "Dr. McCutcheon, Chief Resident Dental Director," regarding the poor patient care exhibited by one of her colleagues, Dr. Kevin Patel. *Id.* at 13. Weeks later, Dr. Patel submitted a complaint against Ms. Doyle, claiming plaintiff was neglectful and abusive to her patients and aggressive towards her colleagues. *Id.* As a result of this complaint, the Agency empaneled an Administrative Investigation Board ("AIB") to investigate Dr. Patel's allegations. *Id.* at 19-20. As recounted by the Federal Circuit, the AIB "was tasked with investigating all allegations concerning whether Ms. Doyle had engaged in: (a) incidents of patient abuse, mistreatment, or neglect; (b) violation of patient treatment procedures and protocols; (c) bullying, disrespectful, insulting, abusive, or obscene language, or conduct; and (d) refusal to carry out supervisors' or physicians' orders or willful resistance to the same." *Doyle*, 852 F. App'x at 754 (citation omitted).

While the AIB investigation was pending, plaintiff was "removed . . . from [her] Clinical Dental Assistant Position . . . for charges of abuse and Neglect of a Veteran." ECF 16 at 13. Plaintiff claims she again tried to obtain help from Fiery and Anderson regarding Dr. Patel's complaint but was told "there was nothing they could do . . . ." *Id.* at 14 (emphasis omitted). Ms.

Doyle asserts that she was thereafter "moved around the medical center," to a series of temporary positions, such as the "Laundry."  ECF 16 at 15, 16.

Plaintiff alleges that, despite these challenges, she continued to advocate for improved working conditions and more effective patient care.  *Id.* at 16-17.  According to Ms. Doyle, her efforts were met with derision from her colleagues and supervisors, which caused her intense feelings of anxiety and paranoia.  *Id.* at 16, 18-20.

Ultimately, on July 27, 2017, the AIB found that "there was 'no credible evidence' as to the first three allegations in Dr. Patel's complaint."  *Doyle*, 852 F. App'x at 754 (citation omitted).  As to the fourth allegation, the AIB determined that there was "'minimal evidence that Ms. Doyle may have refused to carry out supervisor or physician orders.'"  *Id.* at 755 (citation omitted).  At the same time, the AIB concluded that "the dental department was not a healthy environment for Ms. Doyle."  *Id.*  Indeed, the AIB's report "recommended that another, separate AIB should be empaneled to investigate dental service management and conduct."  *Id.*  In particular, the AIB noted that "'Ms. Moody may have orchestrated'" the investigation into plaintiff "'in an effort to 'get rid of' Ms. Doyle for personal reasons.'"  *Id.* (citation omitted).

In accordance with the AIB's recommendation, in September 2017 Ms. Doyle was given a new position as an "Advanced Medical Support Assistant" ("Advanced MSA"), ECF 16 at 24.  In this new role, plaintiff worked in the "'Fishbowl'—a glass enclosed area with four MSAs handling the front counter and two MSAs in the back at the work table."  *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 11.  Ms. Doyle was tasked with supporting three of the Department's busiest medical clinics.  *Id.* at 47.  Vanessa Parsons served as plaintiff's new supervisor.  ECF 16 at 24.  According to the MSPB's findings in *Doyle I*, around the time that plaintiff began to work as an Advanced MSA, Ms. Doyle was able to attend the "MSA Academy,"

a "six-day (approximately) training course that instructs the new MSA to perform her basic duties." MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 2 n.4.

But, according to Ms. Doyle, she was set up to fail. ECF 16 at 24. In particular, she claims that Ms. Parsons "barely trained" her. *Id.* at 46. Moreover, the trainings plaintiff received were allegedly difficult to follow and "always in an open bay area, with a lot of commotion . . . ." *Id.* at 47. And, plaintiff's later requests for help from Ms. Parsons were routinely denied. *Id.* at 46-47. Moreover, on March 22, 2018, plaintiff was allegedly made to "switch" and work for "three new clinics," each of which had its own new and confusing "clinic rules." *Id.* at 47.

Plaintiff contends that she was subjected to further harassment by Ms. Parsons and her new coworkers throughout her tenure as an Advanced MSA. *See id.* at 45-46. For example, Ms. Doyle asserts that she was "screamed at and belittled" by her coworkers, "due to a process, [she] did not know about." *Id.* at 46. On another occasion, Ms. Doyle claims that one of her colleagues taunted her for the difficulty she had experienced in adjusting to her new role. *See id.* at 34. The alleged abuse became so difficult for plaintiff that she "filed disruptive behavior reports (DBR) against her supervisor and coworkers" for which, according to plaintiff's testimony at the MSPB, "her supervisor and coworkers both got so angry with her that she reasonably believed they might physically attack her." *Id.* at 45 (quoting *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 22-23). Nevertheless, plaintiff alleges that Fiery improperly closed these reports. ECF 16 at 45.

Shortly after Ms. Doyle began her new role as an Advanced MSA, Ms. Parsons "went to her manager to seek advice regarding Ms. Doyle's performance, and her manager sent her to HR for guidance." *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 12. Then, in October 2017, Ms. Doyle "was taken off regular duties and placed in an office/conference

room to work on alternate projects." *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 12.

Further, plaintiff, who is Catholic, also asserts that Ms. Parsons discriminated against her on the basis of her religion. ECF 16 at 35-36. The gist of her religious discrimination claim centers on an allegation that Ms. Parsons told Ms. Doyle that she "could not even say 'MERRY CHRISTMAS' or 'GOD BLESS YOU . . . .'" *Id.* at 35. And, Ms. Doyle claims that Ms. Parsons stated that this was not a "VA policy," but rather her own policy. *Id.*

Ms. Doyle also claims that Ms. Parsons discriminated against her on the basis of her gender. ECF 16 at 36. To support this allegation, Ms. Doyle explains that Ms. Parsons required plaintiff to "enter annual leave" to attend an "EEO LGBT pride event." *Id.* at 36. Plaintiff believes this was discriminatory because "other employees [did] not have to put in leave" in similar circumstances. For instance, Ms. Doyle alleges that Ms. Parsons told one of plaintiff's colleagues "who asked to attend her daughter's kindergarten orientation, to just put in leave whenever she got back." *Id.* And, on a separate occasion, Ms. Parsons "did not make" one of Ms. Doyle's colleagues "who went to pick up Lunch for everyone use any leave." *Id.*

In addition, Ms. Doyle contends that the VA failed to provide her with a reasonable accommodation for her disability. *See id.* at 23-27. Plaintiff appears to claim a disability on the basis of an ADHD diagnosis, dyslexia, insomnia, and fibromyalgia, which causes her pain, anxiety, numbness, and fatigue. *Id.* at 2, 34, 55.

As recounted in *Doyle I*, in October 2017, after Ms. Parsons "began to discuss an error" that plaintiff made "with [Ms. Doyle]," plaintiff "immediately requested a reasonable accommodation (RA)." *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 11-12. Ms. Parsons then sent Ms. Doyle to the Agency's Human Resources department "to

begin the RA process." *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 12.

In November 2017, Ms. Doyle submitted a formal request to the Agency for a reasonable accommodation, seeking a "private office for a quieter workspace." *Stacie D.*, Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 2.  At first, the Agency did not process Ms. Doyle's request because she did not include a required form from her physician, which rendered her request incomplete.  *Stacie D.*, Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 2; *see also* ECF 16 at 25.  On December 28, 2017, after further prompting by plaintiff, the VA "requested medical documentation from [plaintiff's] physician."  *Stacie D.*, Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 2.  But, for reasons not made entirely clear in the Amended Complaint or plaintiff's other proceedings, the Agency did not obtain the required paperwork to proceed with plaintiff's request until June 2018.  *See* ECF 16 at 27; *Stacie D.*, Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 2.

In January 2018, Ms. Parsons brought Ms. Doyle's alleged poor performance to the attention of Dr. Michael Zapor, the Agency's Chief of Medicine.  *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 3.  Dr. Zapor recommended that Ms. Doyle "attend the MSA academy a second time in early 2018." *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 3.  But, even after attending this training, Ms. Doyle's performance did not improve, according to testimony provided to the MSPB.  *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 3.  As Ms. Parsons explained, Ms. Doyle "was the most heavily trained MSA ever" but simply "could not perform her duties adequately . . . ."  *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 27 (citation omitted).  Moreover, Ms. Parsons testified that "[w]hile all MSAs made mistakes, [Ms. Doyle's] were more

frequent, repeated, and often more serious." *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 27 (citation omitted).

On April 23, 2018, based on Ms. Doyle's alleged lack of improvement, Dr. Zapor, acting as the Agency's "proposing official," *see Doyle I*, No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 17, formally proposed plaintiff's termination.  ECF 16 at 27.  As recounted in *Doyle I*, the Agency asserted four "specifications" of "Failure  to Maintain a Successful Level of Achievement in the critical Element Titled Administrative"; seven "specifications" of "Failure to Maintain a Successful Level of Achievement in the Critical Element Titled Scheduling";  five "specifications" of "Failure to Maintain a Successful of Achievement in the Critical element Titled CRPS/Documentation"; three "specifications" of "Failure to Follow Procedures";  eleven "specifications" of "Failure to Follow Instructions"; eleven "specifications" of "Conduct Unbecoming"; and one "specification" of "Failure to Use the Correct Title Block."  MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 12-16.  And, "the proposed removal was accompanied by a large volume of supporting evidence."  *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 16.

Around the same time that the removal was proposed, Ms. Parsons accused plaintiff of "improperly printing and keeping patient information."  *Stacie D. v. Wilkie,* Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 2; *see* ECF 16 at 51.  Consequently, Ms. Doyle was "removed from the MSA 'fishbowl' area and assigned as a greeter at a kiosk area . . . ."  *Stacie D. v. Wilkie,* Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 2; *see* ECF 16 at 51.  Ms. Doyle remained in this position until she was formally terminated in September 2018.  *Stacie D. v. Wilkie,* Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 2.  Plaintiff claims that the re-

assignment was pretextual; in her view, the reassignment was meant to punish her for speaking up about "wrongdoing." ECF 16 at 51.

On May 8, 2018, plaintiff "presented a one-hour reply and a voluminous written reply" to Timothy Cooke, the Agency's "Medical Center Director and deciding official," addressing the charges against her. *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 16, 17. Mr. Cooke upheld Dr. Zapor's proposal to remove plaintiff. *See Stacie D.*, Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 2. However, "the removal was placed on hold by the Office of Special Counsel and the Agency's Office of the Inspector General, pending the outcome of investigations." *Stacie D.*, Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 2.

On July 31, 2018, plaintiff was told that she could "use a conference room for morning break/computer time, lunch, and afternoon break/computer time," as an accommodation for her disability. *Stacie D. v. Wilkie,* Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 3. "[A] Human Resources Assistant" considered a number of further possible accommodations but concluded "there were no tasks that [plaintiff] could do that would provide privacy, less noise, and less distraction, because of safety issues and the location" of Ms. Doyle's new workstation at the kiosk. *Stacie D.,* Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 3. When asked about the accommodation made available to her, plaintiff explained that although "it was relatively quieter . . . it was not like being in the open MSA area or standing at the kiosk." *Stacie D.,* Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 3.

The Agency's investigations were completed "on (or about) September 18, 2018." *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 17. Two days later, plaintiff's termination was formally effectuated. *See Doyle I*, No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 17.

Ms. Doyle appealed the termination to the MSPB, arguing that her removal was in retaliation for her whistleblowing activity, and because the Agency discriminated against her based upon plaintiff's disability. *See Doyle I*, No. PH-0714-18-0483-I-1, 2019 WL 1315767, ECF 40-1 at 21-22. Fiery was not named as a party. Judge Syska sustained plaintiff's termination. He determined that there was ample evidence that the Agency's action was not retaliatory. *Doyle I*, No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 21. Further, he found that the Agency could have reasonably concluded that there existed no "viable accommodation" that "would allow [plaintiff] to perform the essential function of her job." *Doyle I*, No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 21-22.[6]

Plaintiff then filed a petition with the EEOC OFO, seeking review of *Doyle I* as it related to her claim of discrimination by the VA on the basis of plaintiff's disability. *See Stacie D.*, Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 1. The EEOC OFO affirmed the MSPB's decision, concluding that Ms. Doyle was ineligible for reassignment, there was no reasonable accommodation that would have enabled her to perform the essential functions of the position for which she had been hired, and the Agency had legitimate, nondiscriminatory reasons for her removal. *Stacie D.*, Petition No. 2020004671, 2020 WL 6710397; ECF 1-2 at 4-7.

In June 2019, the MSPB heard another matter from plaintiff, in which she asked for "corrective action" regarding ten alleged adverse personnel actions taken by the Department, such as its decision to empanel an AIB to investigate Ms. Doyle. *See Doyle II*, MPSB No. PH-1221-

---

[6] The MSPB found that, with one exception, the evidence supporting the Agency's charges against plaintiff satisfied the Agency's burden of proof. *Doyle I*, No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 28 n.18. But, the MSPB rejected the Agency's finding that plaintiff's disclosure to a patient that she suffered from dyslexia constituted misconduct. *Doyle I*, No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 28 n.18

18-0012-W-3, 2019 WL 2745924.[7]   Although *Doyle I* and *Doyle II* were initially to be tried together, Judge Syska separated the actions, explaining that "given the nature of the appellant's pleadings, both in number of purported disclosures . . . and number of purported retaliatory/personnel actions," a "consolidated trial would be impossible, particularly for the pro se appellant." *Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 10 n.1.

Noting the "potential duplication" of issues in the proceedings, in *Doyle II* Judge Syska distinguished the issues the two cases presented, as follows, MSPB No. PH-1221-18-0012-W-3, 2019 WL 2745924:

> Doyle 1 pertained to the appellant's removal and included a defense of whistleblower retaliation.  As to the affirmative defense, the appellant challenged various agency actions/incidents . . . as evidence of retaliatory animus, including arguable personnel actions that could not be addressed as retaliatory personnel actions in the context of removal . . . In Doyle 2, the appellant had the opportunity to challenge these actions/incidents as retaliatory personnel actions under the broader jurisdiction of the IRA appeal.

In *Doyle II*, Dr. James Regan, the chair of the AIB, testified that, contrary to the AIB's findings, the "'underlying basis of the AIB was valid'" and "'there was no evidence Moody was engaging in a vendetta.'"  MSPB No. PH-1221-18-0012-W-3, 2019 WL 2745924.  (citation omitted).  Significantly, the MSPB found that "the AIB investigation was not the result of supervisor misconduct, and an investigation, without more, is not a personnel action."  *Id.*  Judge Syska explained: "Generally, the investigation of an employee without more (such as express threats of discipline that suggested the investigation was a mere formality), does not constitute a personnel action."  *Id.* (citation omitted).

---

[7] The version of *Doyle II* available in Westlaw does not include page numbers.  Moreover, plaintiff did not attach a copy of *Doyle II* with her submissions to the Court.  Therefore, my references to *Doyle II* do not include pin cites.

As to the instances of Agency conduct that did constitute an adverse personnel action, such as the Agency's decision to assign Ms. Doyle "exclusively to kiosk duties," the MSPB concluded that the plaintiff had undisputedly made at least some whistleblower protected disclosures and the Agency had "a slight motive to retaliate" against her. *Doyle II*, MSPB No. PH-1221-18-0012-W-3, 2019 WL 2745924. Nonetheless, the MSPB found that plaintiff had failed to show that, but for her whistleblowing activity, the Agency would not have taken these same actions. *Id.*

Plaintiff appealed *Doyle II* to the U.S. Court of Appeals for the Federal Circuit, challenging the MSPB's resolutions of four of the alleged adverse personnel actions, including the Agency's decision to empanel the AIB as well as plaintiff's "two reassignments to non-patient care duties." Brief of Petitioner at 2 n.2, *Doyle*, 855 F. App'x 753 (No. 19-2149).[8] On May 14, 2021, the Federal Circuit reversed the MSPB. *Doyle*, 855 F. App'x at 762. As an initial matter, the court noted that although an "investigation of an employee, without more, is not a qualifying personnel action . . . 'a retaliatory investigation either on its own or as part of a broader set of circumstances, may qualify as a personnel action if it rises to the level' of a 'significant change in duties, responsibilities, or working conditions." *Id.* at 759 (quoting *Sistek v. Dep't of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020)). And, the court observed that, in this case, "there is no dispute that Ms. Doyle had several significant changes in job duties and responsibilities as well as working conditions," and "the AIB investigation was the direct cause for at least one change in Ms. Doyle's change in duties." *Doyle*, 855 F. App'x at 759.

---

[8] The Agency argued that plaintiff waived "any claim concerning those reassignments because she failed to present those alleged personnel actions for the administrative judge's consideration." Brief of Respondent at 13, *Doyle*, 855 F. App'x 753, (No. 19-2149). The Federal Circuit disagreed, noting that Ms. Doyle had "raised her reassignments in her submissions to the OSC . . . before the Board in her initial appeal forms . . . and in her closing argument at the Board hearing." *Doyle*, 855 F. App'x at 758 (internal citations omitted).

Moreover, the Federal Circuit indicated that, in its view, "the circumstances surrounding the AIB investigation [were] unusual." *Doyle*, 855 F. App'x at 759. Among other things, the court highlighted the suspicious timing of the Agency's decision to empanel the AIB; the AIB's conclusion that the investigation was a "manipulation by Ms. Doyle's supervisors as a means to 'get rid' [of] her"; the AIB's finding that "the atmosphere and work environment in Ms. Doyle's dental unit had been rendered so toxic . . . that it was not prudent to return her to her former . . . position and therefore it was recommended that she be reassigned (for a third time)"; and the AIB's determination that "almost all the allegations brought against Ms. Doyle were not credible and not substantiated by evidence." *Id.* at 759. Accordingly, the court found that the record evidence established that" the Agency's decision to initiate "the AIB investigation was retaliatory, either on its own or as a part of a broader set of circumstances." *Id.*

The VA asked the Federal Circuit "to disregard the findings of the AIB on grounds that the [MSPB] determined that the AIB findings were contradicted by Dr. Regan." *Id.* But, the Federal Circuit noted that "Dr. Regan's testimony" was "little more than unsupported post hoc rationalizations," which did not disprove the AIB's factual findings. *Id.* Indeed, the court found it "strikingly incredible" that the Department would argue that the MSPB "correctly discredited the agency's own investigation based on Dr. Regan's conclusory, unsupported testimony," made "apparently on his own behalf and not on behalf of the AIB." *Id.* at 760.

Ultimately, the Federal Circuit concluded that the "AIB investigation was a retaliatory investigation closely related to at least one reassignment." Accordingly, the court determined "that the [MSPB]'s legal conclusion that the AIB investigation was not a qualifying personnel action was contrary to law." *Id.* Furthermore, the court found that the evidence the MSPB relied upon to conclude that the Agency would have empaneled the AIB without regard for any of Ms. Doyle's

16

disclosures, such as Dr. Patel's testimony, "lack[ed] credibility and [was] not substantiated with evidence." *Doyle*, 855 F. App'x at 761. Therefore, the court reversed the MSPB's decision and awarded costs to plaintiff. *Id.* at 762.

The Federal Circuit did not expressly address the parties' arguments regarding the MSPB's handling of the other personnel actions that were raised in plaintiff's appeal. It said: "The court has considered the parties' remaining arguments and does not find them persuasive." *Id.*

Plaintiff recently docketed a subsequent order from the MSPB, indicating that it will re-open Ms. Doyle's case "for further proceedings, consistent with the Federal Circuit's opinion" under a newly assigned docket number, PH-1221-18-0012-M-1. ECF 41-1 at 23.

Ms. Doyle filed her initial complaint in this Court on November 30, 2020. She seeks judicial review of the MSPB decision in *Doyle I*, pursuant to 5 U.S.C. § 7703(b)(1)(B). ECF 16 at 2. The Amended Complaint also includes a Title VII claim against the Agency that was not raised before the MSPB. *Id.* Plaintiff states: "[T]he Agency did discriminate, retaliate, fail to accommodate, harass me in a hostile environment daily, failure to hire/promote, intimidate with placement under Pre-text investigations, creating unequal/unfair terms and conditions of my position with wrongful/unlawful termination against me due to my Gender, disability, Faith in my Religion, Whistleblower . . . ." *Id.* at 6.

Furthermore, Ms. Doyle claims that Fiery, in her capacity as a NAGE official, failed to "assist and represent [Ms. Doyle]" and "dismissed [plaintiff's] Disruptive Behavior Reports of the Hostile environment [she] was enduring." *Id.* Notably, neither Fiery nor any NAGE official were named as defendants in any of Ms. Doyle's administrative proceedings.

And, the Complaint is replete with claims that Judge Syska's management of plaintiff's proceedings before the MSPB constituted harassment, retaliation, and discrimination. *See id.* at 4.

The allegations appear to pertain to Judge Syska's conduct in both *Doyle I* and *Doyle II*.  *See id.* at 29 (discussing Judge Syska's questioning regarding the accommodation plaintiff sought, an issue relevant to *Doyle I*); ECF 16 at 32 (alleging that Judge Syska "remov[ed] evidence from the case docket without asking [plaintiff], pertaining to [her] daughter's disability and the needs of [plaintiff] to advocate," an issue relevant to *Doyle II*.  At bottom, plaintiff contends that Judge Syska was determined to rule against her.  *See e.g.*, *id.* at 27 (contending that Judge Syska sought to "confuse [plaintiff], interrupt[ ] [her]" by "asking questions . . . together, to get [plaintiff] to say something he [could] use against [plaintiff])."  And, she appears to contend that he did so because she is a "disabled pro se woman appellant . . . ." *Id.* at 4.

To remedy her alleged injuries, plaintiff seeks compensatory and punitive damages, "a clean SF-50 record with Office of Personnel Management, 2x back pay, return of all sick/vacation, full backpay of retirement TSP and gains, my Federal Career Position back with original Comp date of July 27, 2015 . . . with protection from future discrimination and Retaliation."  *Id.* at 53.

## II.        Standards of Review

### A.  12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187,

192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *accord Clear Channel Outdoor, Inc.*, 22 F. Supp. 3d at 524. In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Fiery brings a facial challenge as to this Court's jurisdiction over plaintiff's claim against her. ECF 34-1 at 8-9 She argues that, taking plaintiff's assertions as true, the crux of plaintiff's allegations amount to a claim that Fiery violated her statutory duty of fair representation. *Id*. at 8. However, according to Fiery, federal district courts do not have jurisdiction to hear such claims. ECF 34-1 at 9.

### B.  12(b)(3)

A defendant may challenge the plaintiff's choice of venue by way of a motion under Rule 12(b)(3) of the Federal Rules of Civil Procedure. In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate. *Bartholomew v. Virginia Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), overruled on other grounds by *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982); *accord Tinoco v. Thesis Painting, Inc.*, GJH-16-752, 2017 WL 52554, at *2 (D. Md. Jan. 3, 2017);

*Jones v. Koons Auto. Inc.*, 752 F. Supp. 2d 670, 679 (D. Md. 2010).   If the court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing that venue is proper." *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).   "In assessing whether there has been a prima facie venue showing, [the court views] the facts in the light most favorable to the plaintiff."  *Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012).

And, the court may "freely consider evidence outside the pleadings . . . ."  *Sucampo v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *see also Aggarao*, 675 F.3d at 365-66 ("On a motion to dismiss under Rule 12(b)(3), a court is permitted to consider evidence outside the pleadings."); *Taylor v. Shreeji Swami, Inc.*, PWG-16-3787, 2017 WL 1832206, at *1 (D. Md. May 8, 2017) (same); *Convergence Mgmt. Assocs., Inc. v. Callender*, TDC-15-4015, 2016 WL 6662253, at *2 (D. Md. Nov. 10, 2016) (same).  Accordingly, in evaluating the Agency's challenge to the Amended Complaint under Rule 12(b)(3), the Court may consider the exhibit that was filed in support of the Agency Motion. *See* ECF 29-2.

### C.  12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Services Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan*

*Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir.

2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).  But, a court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion.  *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  However, "in the relatively rare

circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel.*

*Oberg. v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows. Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998); *see USA Eng. Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, __F. App'x__, 2021 WL 3162671, at *2 (4th Cir. July 27, 2021).  And,  "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Goines*, 882 F.3d at 167. In other words, the "general rule" is that "the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint." *Goines*, 882 F.3d at 165.  But, "in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* at 167.

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __U.S. __, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.

24

Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Ms. Doyle did not file any exhibits with the Amended Complaint.  But, the suit references emails that Ms. Doyle exchanged with Agency officials, and portions of a transcript of Ms. Doyle's hearing before the MSPB in *Doyle I*.  *See, e.g.*, *id.* at 11-12, 20-22, 24-26.  Accordingly, I may consider these materials.  And, she included the EEOC OFO opinion in *Stacie D.* as an exhibit to the original complaint.  ECF 1-2.  Because plaintiff is self-represented, she may not have known of the practice of resubmitting exhibits with an amended filing.  In any event, I may take judicial notice of materials in public dockets.  *See* Fed. R. Evid. 201(b)(2).  Accordingly, I may also consider this exhibit.

Plaintiff also attached over 150 pages of emails as an exhibit to her opposition to the Fiery Motion.  *See* ECF 38-1. These emails are not integral to the Amended Complaint.  Accordingly, I do not consider them in resolving the Fiery Motion.

In addition, as explained above, I may "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. 2016); *see* Fed. R. Evid. 201(b)(2). Therefore, I may take judicial notice of the MSPB's decisions in *Doyle I* and *Doyle II*, and the Federal Circuit's opinion reversing the MSPB's decision in *Doyle II*.

In reviewing the motions, I am mindful that plaintiff is self-represented. Therefore, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not

absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

### III.   Discussion

### A.  Motion for Extension of Time

As a preliminary matter, I shall deny plaintiff's motion opposing the extensions of time granted to the Department and to Fiery to respond to the Amended Complaint (ECF 23).  Both defendants responded within the period of the extensions.  *See* ECF 29; ECF 34.  Their extension requests were reasonable and did not cause a delay in the case.

### B.  Fiery Motion to Dismiss

Fiery asserts that plaintiff's claim against her for breach of the duty of fair representation cannot survive because this Court lacks subject matter jurisdiction to hear it.  ECF 34-1 at 8-9. Moreover, Fiery argues that if the Court has jurisdiction, the claim must be dismissed for failure to state a claim, because this duty does not apply to individual union officials and, even if it did, Ms. Doyle does not allege facts establishing that Fiery breached this duty.  *Id.* at 9-12.

Ms. Doyle does not specify or delineate with clarity her cause of action against Fiery. Accordingly, I must first determine whether Fiery is correct in claiming that plaintiff's allegations amount to a claim of breach of a duty of fair representation.

Plaintiff alleges that Fiery, as a NAGE official, failed to represent Ms. Doyle in a "proper manner" and improperly "dismissed [her] Disruptive Behavior Reports of the Hostile environment [she] was enduring."  ECF 16 at 6.  Plaintiff alleges that Fiery failed to assist her in combatting

the Agency's retaliatory actions against her, despite plaintiff's repeated requests for help.  *See e.g.*, *id.* at 12-13, 45.   And, Ms. Doyle insinuates that Fiery's refusal to defend Ms. Doyle was emblematic of an improper relationship between Fiery and "Facility Leadership."  *Id.* at 14.

In her response to the Fiery Motion, plaintiff hotly disputes that her claim should be dismissed on the ground that the Court lacks jurisdiction to hear it. ECF 38 at 1.  Plaintiff's response also includes lengthy allegations claiming that, among other things, Fiery and other NAGE officials prevented Ms. Doyle from filing grievances of unfair labor practices, sabotaged her proceedings before the MSPB, and failed to help Ms. Doyle obtain a position for which she believes she was qualified.  *See generally id.* at 5-32; ECF 38-1.  Ultimately, however, plaintiff does not seem to disagree with Fiery's characterization of her claim.  ECF 38 at 2 ("In my defense for a claim of relief . . . I was unsure of the legal terms that I needed to use, so the best way to say it was "breach of duty.").  In sum, I am persuaded that Fiery's characterization of plaintiff's claim against her is accurate.

To the extent that plaintiff included new facts in her response as a means to establish a new cause of action against Fiery, "'it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *Mylan Labs, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).  But, even if I were to consider these new allegations, their inclusion would not change the resolution.

An employee's right to fair representation by his or her union is rooted in Title VII of the Civil Service Reform Act, 5 U.S.C. §§ 7101, *et seq.*  Pertinent here, § 7114(a)(1) of 5 U.S.C. provides: "A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and . . . is responsible for representing the

interests of all employees in the unit it represents without discrimination and without regard to labor organization membership."

Chapter 71 of the CSRA is known as the Federal Service Labor Management Relations Act ("FSLMRA").  In 5 U.S.C. § 7116(b)(8), it states that "it is an unfair labor practice for a labor organization . . . to otherwise fail or refuse to comply with any provision of this chapter."  But, for federal employees and the unions that represent them, the Federal Labor Relations Authority ("FLRA") determines if a claim of unfair labor practice has merit and takes remedial action if appropriate.  *See* 5 U.S.C. § 7118.

Notably, the CSRA does not provide a private right of action against a labor organization to enforce the union's duty of fair representation.  *See Karahalios v. Nat'l Fed. Of Fed. Employees, Local 1263*, 489 U.S. 527, 533 (1989) ("[N]either the language nor the structure of the Act shows any congressional intent to provide a private cause of action to enforce federal employees unions' duty of fair representation.").  Rather, 5 U.S.C. § 7118 indicates that complaints alleging an unfair labor practice must be brought before the FLRA.

Thus, Fiery correctly notes that plaintiff's "remedy, if any exists, is with the FLRA and not this Court."  ECF 34-1 at 9.  And, federal courts have concluded that this limitation is a jurisdictional one.  *See Lane v. Wynne*, PJM-04-1051, 2006 WL 4711891, at *3 (D. Md. June 23, 2006) (concluding that the court lacked subject matter jurisdiction to adjudicate a fair representation claim), *aff'd*, 218 F. App'x 262 (4th Cir. 2007); *Dailey v. Lew*, GLR-15-2527, 2016 WL 1558150, at *3 (D. Md. Apr. 18, 2016) (same); *Price v. American Federal Gov't Employees*, 3:15-CV-293, 2016 WL 1276421, at *5-*6 (E.D. Va. Mar. 30, 2016) (same).

In the light most favorable to plaintiff, the Amended Complaint alleges that Fiery's conduct constituted a breach of the duty of fair representation.  But, this Court lacks jurisdiction to hear such a claim.  Therefore, the claim against Fiery is subject to dismissal.[9]

### C.  VA's Motion to Dismiss

The Amended Complaint comes to the Court, at least as it pertains to plaintiff's allegations against the VA, on judicial review of a MSPB decision, subject to the provisions of the CSRA, 5 U.S.C. §§ 1101 *et seq*.  Plaintiff asserts, ECF 16 at 2: "This court has Jurisdiction to review the decision of the Equal Employment Opportunity Commission . . . and MSPB . . . to assessing and determining the facts, deep into the Federal law of the "AFFIRMED decision."  *See Doyle I*, No. PH-1221-18-0012-W-3, 2019 WL 1315767; ECF 40-1 at 10.

"As a matter of background," under the CSRA "'a federal employee subjected to' a particularly serious personnel action such as a discharge" may "'appeal her agency's decision'" to the MSPB.  *Bolton v. Colvin*, 674 F. App'x 282, 286 (4th Cir. 2017) (quoting *Kloeckner v. Solis*, 568 U.S. 41, 43 (2012)).  In such an action, an employee may also allege discrimination in violation of federal law when that discrimination is "tied to claims arising from an adverse employment action over which the [MSPB] otherwise has jurisdiction."  *Chin-Young v. United States*, 774 F. App'x 106, 112 (4th Cir. 2019) (citing 5 U.S.C. § 7502).  Such appeals are referred to as "mixed cases."  5 C.F.R. § 1614.302.

Where, as here, a plaintiff first appeals a MSPB decision to the EEOC OFO, and it concurs with the MSPB, the plaintiff may then seek judicial review of the MSPB's decision in an appropriate federal district court. *See* 5 U.S.C. § 7702(b)(5)(A).  But, under the CSRA, in a mixed

---

[9] Given this conclusion, I need not address Fiery's additional arguments in favor of dismissal.

29

case, a petitioner must seek judicial review of the MSPB's decision "in the appropriate district court," according to "the enforcement provisions of the relevant antidiscrimination statutes." *Chin-Young*, 774 F. App'x at 112 (citing 5 U.S.C. § 7703(b)(2)).

As I explain below, this Court is not the appropriate district court to hear plaintiff's case. Furthermore, judicial review is limited to those issues that were raised before the MSPB.  *See* 5 U.S.C. §§ 7703(a)(2), 7703(b)(2); *Clark v. Brown*, ___ F. Supp. 3d.___, 2021 WL 1697408, at *3 (E.D. Va. Apr. 29, 2021) ("[I]t is well established that . . . civil service claims are judicially reviewable only if the plaintiff has administratively exhausted those claims by first presenting them to the appropriate agency . . . .") (citing *Fleming v. Spencer*, 718 F. App'x 184, 189 (4th Cir. 2018); *Bonds v. Leavitt*, 629 F.3d 369, 379 (4th Cir. 2011)).

The Agency Motion implicates plaintiff's claims under the WPA, the ADA, Title VII, and the Rehabilitation Act.  Because plaintiff's claim under the ADA cannot survive in any court, I shall dismiss it.  Because the only proper defendant pursuant to her remaining claims is the current Secretary of Veterans Affairs, I shall dismiss plaintiff's claims against the Individual Defendants. Moreover, as explained *infra*, I shall also dismiss plaintiff's claims against Judge Syska. And, because this Court is not the appropriate venue to address plaintiff's claims under Title VII and the Rehabilitation Act, I shall transfer the remaining claims in the case to a proper forum.  My reasons follow.

### 1.  ADA

In the Amended Complaint, plaintiff asserts a claim under Title I of the ADA, 42 U.S.C. §§ 12111-12117.  ECF 16 at 2-3.  The ADA signifies Congress's efforts to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" as well as a "clear, strong, consistent, enforceable standards addressing discrimination

against individuals with disabilities."  42 U.S.C. §§ 12101(b)(1)-(2).  To that end, Title I of the

ADA prohibits the discrimination against a "qualified individual on the basis of disability in regard

to . . . the hiring, advancement, or discharge of employees . . . ."  42 U.S.C. § 12111(a).  But, of

import here, Title I expressly exempts the federal government from its protections.  *Id.* §

12111(5)(B)(i).

Plaintiff was employed by a federal agency: the Department of Veterans Affairs.  ECF 16

at 9.  Accordingly, plaintiff's claim pursuant to Title I of the ADA fails to state a claim for which

relief may be granted.  Instead, plaintiff's claim for discrimination on the basis of her disability

may only proceed, if at all, pursuant to the Rehabilitation Act.  *See Gatling v. Carter*, PX-15-3723,

2017 WL 480756, at *3 (D. Md. Feb. 6, 2017) (explaining that because "'the Rehabilitation Act is

the exclusive means by which a plaintiff may raise claims against federal agencies relating to

disability discrimination,'" the plaintiff could not pursue an independent cause of action under the

ADA) (quoting *Berkner v. Blank*, DKC-12-1390, 2013 WL 951561, at *8 (D. Md. Mar. 11, 2013);

*Jeffries v. Federal Emergency Mgmt Agency*, PX-19-1816, 2020 WL 4262270, at *5 (D. Md. Jul.

24, 2020) (describing the Rehabilitation Act as "the exclusive vehicle for disability claims brought

against a federal entity").

### 2.   Rehabilitation Act, WPA, and Title VII

#### a. The Individual Defendants

In the Agency Motion, the VA contends that plaintiff's claims against the Individual

Defendants under Title VII and the Rehabilitation Act are improper because these statutes provide

a cause of action only against the Agency's head, not its employees.  ECF 29-1 at 5-6.  I agree.

When pursuing a cause of action under Title VII, a plaintiff may maintain her claim only

against the head of the agency or department being sued.  *See* 42 U.S.C. § 2000e-16(c) ("An

employee . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action, as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." *See Lissau v. S. Food Serv.*, 159 F.3d 177, 180 (4th Cir. 1998) (holding that "supervisors are not liable in their individual capacities for Title VII violations); *Abeles v. Metro Wash. Airport Auth*, 676 F. App'x 170, 176-77 (4th Cir. 2017); *Spell v. Wright*, RDB-19-722, 2020 WL 247460, at *3 (D. Md. Jan. 16, 2020) (explaining that a plaintiff may not maintain a Title VII claim against other employees).

The Rehabilitation Act tracks this pleading requirement, stating: "The remedies, procedures, and rights, set forth in section 717 of the Civil Rights Act of 1964 . . . shall be available, with respect to any complaint under section 791 of this title, to any employee . . . aggrieved by the final disposition of such complaint . . . ."  29 U.S.C. § 794a(a)(1).  *See also Eastridge v. Brost*, TDC-18-3770, 2019 WL 2124895, at *2 (D. Md. May 15, 2019) ("[B]oth Title VII and the Rehabilitation Act permit a federal employee to file a civil action asserting employment discrimination claims against only the head of the department, agency, or unit.") (Citation and internal quotation marks citation omitted).

Moreover, because this action is one for judicial review of an MSPB decision, 5 U.S.C. § 7703(a)(2) applies.  This subsection provides that in an action where the "employee . . . seeks review of a final order or decision on the merits on the underlying personnel action . . . the agency responsible for taking the personnel action shall be the respondent."  *See Turner v. Merit Sys. Prot. Bd*, No. 20-2613-SHL-tmp, 2021 WL 3852743, at *4-*7 (W.D. Tenn.  Jul. 29, 2021); *Boyce v. Gaynor*, 18-1576-CBM-(SHKx), 2021 WL 829734, at *1 (C.D. Cal. Jan. 20, 2021); *Ausch v. Dep't of Justice*, 1:17-CV-2949 (FB)(PK), 2019 WL 1324944, at *2 (E.D.N.Y. Mar. 25, 2019).

Accordingly, the only proper defendant in this case as to plaintiff's Title VII, Rehabilitation Act, and WPA claims is the current Secretary of the Department of Veteran Affairs: Denis McDonough.  Therefore, Ms. Doyle's claims against the Individual Defendants must be dismissed for failure to state a claim.

### b.  Judge Syska

Plaintiff is clearly unhappy with Judge Syska's rulings.  Although she does not clarify the particular cause of action against him, she alleges, in short, that his conduct was retaliatory, constituted harassment, and discriminated against her on the basis of her gender, religion, and disability.  *See, e.g.*, ECF 16 at 4-6.

The Agency Motion suggests that Judge Syska is not a proper defendant as to plaintiff's employment discrimination and retaliation claims.  *See* ECF 29-1 at 4, 5.  But, the Agency Motion fails to address plaintiff's claims, to the extent they arise from Judge Syska's rulings in *Doyle I* and *Doyle II*.  *See, e.g.*, ECF 16 at 4-6.  Curiously, the Agency Motion fails to address the doctrine of judicial immunity.

It is well established that judges are protected from suit for "acts committed within their judicial jurisdiction."  *Imbler v. Patchman*, 424 U.S. 409, 418 (1976); *see Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam) (collecting cases).  Judicial immunity ensures that judges can perform their duties without harassment or intimidation.  This is of benefit to the public, "'whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'"  *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citation omitted).  The United States Supreme Court has stated:

> Although unfairness and injustice to a litigant may result on occasion, "it is a
> general principle of the highest importance to the proper administration of justice
> that a judicial officer, in exercising the authority vested in him, shall be free to act

upon his own convictions, without apprehension of personal consequences to himself."

*Mireles*, 502 U.S. at 10 (citation omitted).

Of import here, judicial immunity applies to administrative law judges when they are acting in a judicial capacity, such as presiding over adversarial proceedings and making decisions on issues of fact and law. *See Butz v. Economou*, 438 US. 478, 513-14 (1978). The Supreme Court has said that federal administrative law judges are "functionally comparable" to judges and thus "entitled to absolute immunity from damages liability for their judicial acts." *Id.*; *see Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (noting that the doctrine of absolute immunity extends to "officials whose special functions or constitutional status requires complete protection from suit"); *White v. Wolfe*, PJM-14-1436, 2015 WL 993470, at *1 n.1 (D. Md. Mar. 2015); *Smith v. Wolfe*, GLR-13-648, 2014 WL 3385365, at *4 (D. Md. Jul. 8, 2014); *see also Dixon v. Cole*, TDC-16-3922, 2018 WL 922355, at *2-*3 (D. Md. Feb. 14, 2018) (granting absolute immunity to a Maryland State administrative law judge) *Brightwell v. Hershberger*, DKC-11-3278, 2013 WL 709784, at *4 (D. Md. Feb. 26, 2013) (same).

Absolute immunity can be overcome "in only two sets of circumstances." *Mireles*, 502 at 11-12. First, "a judge is not immune from liability for nonjudicial actions . . . ." *Id.* To determine whether an act is 'judicial,' a court may look to "the nature of the act itself, *i.e.* whether it is a function normally performed by a judge," as well as "the expectations of the parties, *i.e.* whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Second, absolute immunity does not apply to "actions that, "though judicial in nature, [are] taken in complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. But, unless a judge was acting as a private person or in the "clear absence of all jurisdiction," absolute immunity applies, even if

the alleged conduct is erroneous, malicious, or in excess of judicial authority. *Stump*, 435 U.S. at 356-57.

Judge Syska was clearly acting in a judicial capacity.   In both proceedings, he presided over hearings, received testimony from witnesses, and reached conclusions based on that evidence, which he supported in two lengthy written opinions. *See Doyle I*, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 17; *Doyle II*, MPSB No. PH-1221-18-0012-W-3, 2019 WL 2745924.  Moreover, Judge Syska properly exercised jurisdiction over both of plaintiff's appeals.

*Doyle I* was properly brought before the MSPB under 38 U.S.C. § 714.  MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767; ECF 40-1 at 10.  Within the context of an employee's termination from a position with the Department of Veterans Affairs, subsection (c)(4)(A) of 38 U.S.C. § 714 provides that "any removal" "may be appealed to the Merit Systems Protection Board, which shall refer such appeal to an administrative judge pursuant to section 7701(b)(1) of title 5.

And, plaintiff's claims under *Doyle II* were appropriately brought to the MSPB, in accordance with 5 U.S.C. §§ 1221, 2302; 5 C.F.R. § 1201.3(b)(2).  MPSB No. PH-1221-18-0012-W-3, 2019 WL 2745924.  Section 2302(b) of 5 U.S.C., broadly speaking, prohibits discriminatory or retaliatory personnel actions.  And, 5 U.S.C. § 1221(a) provides that any "former employee . . . may, with respect to any personnel action taken, or proposed to be taken, against such . . . former employee . . . as a result of a prohibited personnel practice described in section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D), seek corrective action from the Merit Systems Protection Board."  Moreover 5 C.F.R. § 1201.3(b)(2) clarifies the MSPB's appellate jurisdiction over claims involving retaliation for an employee's whistleblowing activities.

Accordingly, Judge Syska is entitled to absolute judicial immunity.   Therefore, Ms. Doyle's claims against him shall be dismissed.

### c.  The Agency

The Agency urges the Court to dismiss the case because it was filed in the wrong venue or, in the alternative, to transfer the case to a judicial district wherein venue is proper. ECF 29-1 at 3-5.  In particular, the VA claims that plaintiff's claims under Title VII and the Rehabilitation Act are governed by Title VII's venue provision.  ECF 29-1 at 3-4.  Further, the Agency argues that, to the extent plaintiff alleges other claims that are not controlled by "the general venue provision, the narrower provisions of [Title VII] control."  *Id.* at 5.

Where, as here, plaintiff alleges violations of Title VII and the Rehabilitation Act (ECF 16 at 2), venue is determined by Title VII's venue provision, 42. U.S.C. § 2000e-5(f)(3). *See Lengacher v. Reno*, 75 F. Supp. 2d 515, 517 (E.D. Va. 1999) (explaining that venue in a Title VII case is governed by Title VII's venue provision, rather than Section 1391 of 28 U.S.C.); *Shelton v. Lockheed Martin Corp.*, CCB-05-2706, 2006 WL 8456821, at *2 (D. Md. Feb. 6, 2006) (same). *See also* 29 U.S.C. § 794a(a)(1); *Benton v. England*, 222 F. Supp. 2d 728, 731 n.3 (D. Md. 2002) ("Venue for claims brought under the Rehabilitation Act is also governed by the Title VII venue provision . . . .").

This provision, 42 U.S.C. § 2000e-5(f)(3), specifies, in relevant part, that such an action may only be brought in

> any judicial district in the State in which the unlawful employment practice is alleged to have been committed, the judicial district in which the employment records relevant to such practice are maintained and administered, or the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.

Furthermore, the statute notes that if "the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."  42 U.S.C. § 2000e-5(f)(3).

Based on the facts available to the Court, it is clear that venue is not proper in this Court to adjudicate plaintiff's claims under the Rehabilitation Act or Title VII.  Plaintiff and the Agency agree that Ms. Doyle was employed in the Agency's Martinsburg, West Virginia office.  ECF 16 at 2; ECF 29-1 at 4.  There is no evidence that suggests the purportedly unlawful employment practices were committed anywhere other than plaintiff's workplace.  Plaintiff fails to allege any facts suggesting that the Agency maintains records of its employment practices in Maryland or that, but for the Agency's alleged unlawful employment practice, she would have been employed in Maryland.  And, there is no indication that the Agency's principal office is located in Maryland.

 For its part, the Agency claims that "Plaintiff's employment files" were stored electronically, and the Agency's "Human Resources Management Division maintains [these records] in West Virginia."  ECF 29-1 at 5; *see* ECF 29-2, ⁋ 4.  And, the Agency posits that, but for her termination, Ms. Doyle's "employment with the Agency would have continued in West Virginia."  ECF 29-1 at 5; *see* ECF 29-2, ⁋ 5.

Indeed, plaintiff seems to have brought this action in Maryland solely because she resides in this state.  "But, that is not a proper basis for venue under Title VII."  *Wheeler v. Azar*, CCB-20-31, 2020 WL 2490037, at *1 (D. Md. May 14, 2020).  And, it appears that Ms. Doyle concedes, if begrudgingly, this point in her response to the Agency Motion.  ECF 31 at 3 ("Not at any point does the information EEOC OFO tell me that I need to say in the state of which I worked, had it stated please refer to 42 US code 2000e 5 (f)(3), I would have then filed in West Virginia.").

Accordingly, I conclude that plaintiff has not adequately established that venue is proper in the District of Maryland as to her claims under the Rehabilitation Act or Title VII.

This does not end the analysis, however. Plaintiff also claims the Agency and its employees violated the WPA. ECF 16 at 2. Venue as to this claim is governed by the general venue statute, not Title VII. *See Daniels v. Wilkie*, No. 17-1543 (RC), 2018 WL 2324085, at *3 (D.D.C. May 22, 2018) (stating that because claims under the WPA "do not have specific venue provisions, the general venue statute governs venue . . ."); *Gordon v. Gutierrez*, No. 05-1926 (RBW), 2006 WL 1876944, at *3 (D.D.C. Jul. 6, 2006); *Spriggs v. Brownlee*, 5:04-CV-00968 (NPM), 5:04-CV-00644 (NPM), 5:04-CV-01064 (NPM), 2006 WL 1304861, at *9 (N.D.N.Y. May 9, 2006). Specifically, under 28 U.S.C. § 1391(e)(1), a civil action may be brought against "an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority" in any judicial district where:

(A) defendant in the action resides;

(B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(C) the plaintiff resides if no real property is involved in the action.

As explained above, Ms. Doyle was employed in Martinsburg, West Virginia. Accordingly, pursuant to subsection (e)(1)(B), venue for this claim would be proper as to plaintiff's WPA claim in the Northern District of West Virginia. Under subsection (e)(1)(C), venue would also be proper as to the WPA claim in the District of Maryland: this case involves no real property and it is undisputed that plaintiff resides in Maryland. ECF 16 at 55; ECF 29-1 at 2.

Consequently, as to some of plaintiff's claims against the Agency, venue is proper in this Court. Such circumstances call for an analysis of the pendent venue doctrine, which posits that "proper venue as to one claim" may, in the court's discretion, be leveraged to "support both claims

if there are two or more claims that amount to a single cause of action with two grounds for relief." *McNeil v. James*, CCB-04-1807, 2004 WL 2538400, at *2 (D. Md. Nov. 9, 2004).

To my knowledge, the Fourth Circuit has not addressed the pendent venue doctrine, other than once acknowledging it in passing in a nearly decade-old dissenting opinion. *See Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 334 (4th Cir. 2012) (Davis, J., dissenting); *see also Eleazu v. Dir. US Army Network Enter. Ctr., Natick*, 4:20-2576-JMS-SVH, 2020 WL 6875538, at *4 (D.S.C. Nov. 23, 2020) ("It does not appear the Fourth Circuit has addressed the issue of the application of pendent venue of another federal claim.").

In *Lengacher*, 75 F. Supp. 2d 515, Judge Ellis offered a helpful distillation of the ways in which federal courts across the country have employed this theory.  He explained, *id.* at 519 (citations omitted):

> [C]ourts . . . have generally taken one of two approaches [to the pendent venue doctrine].  First, some courts have held that when one claim is subject to a specific venue provision, and the other is not, the more specific venue provision controls.  Other courts . . . determine which of the two or more claims in the complaint is the 'primary' claim, and apply the venue statute applicable to that claim to all the claims.

Under either of these approaches, exercising the pendent venue doctrine to keep the case in this Court would be inappropriate here.  Following the first approach, Title VII's more specific venue provision controls and, as explained above, it provides that venue in this case is proper only in the Northern District of West Virginia.  And, there is no reason to believe that plaintiff's WPA claim should take primacy over her claim under the Rehabilitation Act.

As noted, the Agency asks the Court to dismiss the suit or, in the alternative, to transfer the case to a venue in which jurisdiction would be proper.  ECF 29-1 at 1. Section 1406 of 28 U.S.C. pertains to the "cure or waiver of defects" with regard to venue.  In particular, § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district

shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Thus, the statute makes clear that, where venue is improper, the district court has discretion to dismiss the action or transfer it to a forum in which the case could have been brought. *See id.*; *see also Sewell v. Commodity Futures Trading Comm'n*, PX-16-2457, 2017 WL 1196614, at *4 (D. Md. Mar. 31, 2017) (explaining that, under § 1406(a), "[w]hether a transfer would be in the interest of justice is committed to the discretion of the trial court"); *Ademiluyi v. Nat'l Bar Ass'n*, GJH-15-2947, 2016 WL 4705536, at *3 (D. Md. Sept. 8, 2016) (same); *Estate of Bank v. Swiss Valley Farms Co.*, 286 F. Supp. 2d 514, 521–22 (D. Md. 2003).

Courts generally favor transfer over dismissal unless "plaintiff is harassing the defendants or acting in bad faith or forum shopping." *Ademiluyi*, GJH-15-02947, 2016 WL 4705536, at *3; *see Sorcia v. Holder*, 643 F.3d 117, 122 (4th Cir. 2011) ("Where a Court of Appeals has jurisdiction but lacks venue, it has inherent authority to transfer a case to another circuit where both venue and jurisdiction exists; however, in the exercise of such inherent authority it is appropriate to consider whether the interest of justice mandates transfer."); *Garrett v. Gulf Stream Coach, Inc.*, No. 3:08-CV-792, 2009 WL 936297, at *5 (E.D. Va. 2009) ("Dismissal for improper venue where venue would properly lie elsewhere would serve no real purpose other than to add the additional expense of re-filing the case."); *Gov't of Egypt Procurement Office v. M/V Robert E. Lee*, 216 F. Supp. 2d 468, 473 (D. Md. 2002) ("Courts generally favor transfer over dismissal, unless there is evidence that a case was brought in an improper venue in bad faith or to harass defendants . . . .").

Notably, a district "in which [suit] could have been brought" is a district "in which venue would have been proper."  14D Charles Alan Wright & Arthur R. Miller, FEDERAL

PRACTICE & PROCEDURE (4th ed. 2021), § 3827 (internal quotations omitted); *see Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (finding that the power of a district court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff); *see also Van Dusen v. Barrack*, 376 U.S. 612, n.11 (1964) (noting that § 1406(a) "contains a similar phrase [to § 1404(a)]: ' . . . transfer such case to any district or division in which it could have been brought[ ]'").

In this case, venue would have been proper in the Northern District of West Virginia as to all of plaintiff's surviving claims against the Agency.  It seems evident that "'the most efficient and sensible result is not a non-prejudicial dismissal of [two] claims, but rather transfer of the entire case'" to the Northern District of West Virginia.  *Benton,* 222 F. Supp. 2d at 731 (quoting *Lengacher,* 75 F. Supp. 2d at 519).

Thus, plaintiff's claims against the VA under Title VII, the Rehabilitation Act, and the WPA shall be transferred to the Northern District of West Virginia.

### C.  Remaining Motions

Ms. Doyle has filed three motions that I construe as motions to amend her Complaint.  *See* ECF 27; ECF 40; ECF 41. She has also filed a renewed motion requesting appointment of counsel. *See* ECF 22.  Because this case may not properly proceed in this Court, I shall deny these motions, without prejudice to her right to renew them in the District Court for the Northern District of West Virginia.

## IV.      Conclusion

For the aforementioned reasons, I shall grant the Fiery Motion and dismiss the claims against her.  I shall also dismiss the claims against the Individual Defendants and Judge Syska. And, I shall dismiss the ADA claim against the Agency.

All remaining claims against the VA shall be transferred to the Northern District of West Virginia.  And, I shall deny plaintiff's outstanding motions (ECF 22; ECF 23; ECF 27; ECF 40; ECF 41), without prejudice to her right to renew them in the District Court for the Northern District of West Virginia.

An Order follows, consistent with this Memorandum Opinion.


Date: October 15, 2021                                           _____/s/_____
                                                                                    Ellen Lipton Hollander
                                                                                    United States District Judge