**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**JOCELYN L. PENNELLA DOYLE,**

        Plaintiff,

**v.**                                    **CIVIL ACTION NO.: 3:21-CV-168
(GROH)**

**THE DEPARTMENT OF VETERANS AFFAIRS,**

        Defendant.

**<u>ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS,
DENYING AS MOOT THE PLAINTIFF'S MOTION TO ADD,
AND DENYING THE PLAINTIFF'S MOTION TO APPOINT COUNSEL</u>**

Now before the Court are the Defendant's Motions to Dismiss [ECF Nos. 67, 77], the Plaintiff's Motion to Add Initial Decision from US Merit Systems Protection Board [ECF No. 66] and the Plaintiff's Third Motion to Appoint Counsel [ECF No. 72]. With leave of Court, the Defendant filed a corrected motion to dismiss on April 29, 2022. ECF Nos. 75, 77. The Plaintiff entered a timely Response [ECF No. 78], and the time for a Reply has now passed. For the reasons that follow, the Court will **GRANT** the Defendant's Corrected Motion to Dismiss [ECF No. 77], **TERMINATE as MOOT** the Defendant's initial Motion to Dismiss [ECF No. 67], **DENY as MOOT** the Plaintiff's Motion to Add Initial Decision from US Merit Systems Protection Board [ECF No. 66] and **DENY** the Plaintiff's Third Motion to Appoint Counsel [ECF No. 72].

## I.    PROCEDURAL AND FACTUAL BACKGROUND

### A.  Procedural Background

Jocelyn L. Pennella Doyle ("Plaintiff") initially filed her employment discrimination and retaliation action *pro se* in the United States District Court for the District of Maryland

on November 30, 2020.  ECF No. 1 in 1:20-cv-03478-ELH; ECF No. 1 in 3:21-cv-168-GMG.  With leave of court, the Plaintiff filed an Amended Complaint on March 26, 2021, which now forms the basis of the above-styled civil action.  ECF No. 16 in 1:20-cv-03478-ELH; ECF No. 16 in 3:21-cv-168-GMG.  The Plaintiff's Amended Complaint raises various allegations of discriminatory conduct and retaliation against The Department of Veteran Affairs ("Agency Defendant"), Merit Systems Protection Board Administrative Law Judge Mark Syska, VA Medical Director Timothy Cooke, NAGE representative Kathy Fiery, along with seven individual VA employees, Denis Tim Sullivan, Kent E. McClure, Alice Torres, Dr. Michael Zapor, Vanessa Parsons and Sharon Self.

The Amended Complaint also requests judicial review of an Equal Employment Opportunity Commission decision and a Merit Systems Protection Board decision. Initially, the Plaintiff did not identify what decisions she was requesting review of.  In a later filing, the Plaintiff provided the Court with a copy of Doyle v. Dep't of Veterans Affairs, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767 (March 19, 2019) ("Doyle I") and Stacie D., Petition No. 2020004671, 2020 WL 6710397.[1] ECF No. 40.  It is the Court's understanding that the Plaintiff takes issue with these two decisions.

In her amended complaint, the Plaintiff challenges, and expresses great disappointment with, Administrative Law Judge Syska and his rulings, wherein he ultimately affirmed her termination from the VA.  The Plaintiff alleges claims of discriminatory conduct in the form of failure to hire, failure to promote, failure to accommodate disability, unequal terms and conditions of employment, and, ultimately, termination.  Further, the Plaintiff alleges that she was discriminated against on the basis

---

[1] The Plaintiff was "randomly assigned a pseudonym" in the EEOC proceedings, which "replace[d] [plaintiff's] name" in the decision.  Stacie D., Petition No. 2020004671, 2020 WL 6710397, at *1.

of her gender and sex, religion, and disability.  The Plaintiff cites to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-17; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117; and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, as providing the basis for her claims.  The Court notes that while the Plaintiff does not cite to the Whistleblower Protection Act in her amended complaint, the Plaintiff makes repeated references to her status as a whistleblower and related retaliation issues.

On October 15, 2021, the District of Maryland dismissed the Plaintiff's Amended Complaint as to Defendants Syska, Cooke, Sullivan, McClure, Torres, Zapor, Parsons, Fiery and Self.  ECF No. 42.  The District of Maryland also dismissed the Plaintiff's Americans with Disabilities Act claim against the Agency Defendant.  ECF No. 42.  The District of Maryland then transferred the Plaintiff's case to this District.  ECF No. 42.  The only remaining claims before this Court are the Plaintiff's claims against the Agency Defendant,[2] pursuant to the Rehabilitation Act, Title VII and the Whistleblower Protection Act.

After the Plaintiff's civil action was transferred to this District, the Agency Defendant filed a Motion to Dismiss [ECF No. 67], to which the Plaintiff responded twice [ECF Nos. 68, 71].  However, the Agency Defendant later moved to amend its motion in order to correct two inaccuracies.  ECF No. 69.  After being granted leave to amend [ECF No. 75], the Agency Defendant filed an Amended Motion to Dismiss on April 29, 2022 [ECF No. 77].  The Plaintiff filed a forty-eight-page Response to the Agency Defendant's

---

[2] When seeking judicial review of an order of Merit Systems Protection Board ("MSPB"), the agency being sued before the MSPB remains the defendant.  See Stacie D., Petition No. 2020004671, 2020 WL 6710397, at *7 (Nov. 3, 2020).

amended motion, well in excess of the page limits set forth by this Court's Local Rules. Nevertheless, the Agency Defendant's motions to dismiss are now ripe for adjudication.

Also pending before the Court are the Plaintiff's Motion to Add Initial Decision from US Merit Systems Protection Board [ECF No. 66] and the Plaintiff's Third Motion to Appoint Counsel [ECF No. 72]. The Agency Defendant has not responded to either motion, and the time do so has passed. Both of the Plaintiff's motions are ripe for adjudication.

### B.  Factual Background

While at times difficult to decipher, the Court recites the facts of the case from the amended complaint and in the light most favorable to the Plaintiff.[3] However, because the majority of the Defendants in this matter have already been dismissed, the Court will limit its factual history to the facts most relevant to the remaining claims against the sole remaining Defendant.

On July 26, 2015, the Agency Defendant hired the Plaintiff to work as a dental assistant in the Martinsburg, West Virginia office of the Veterans Health Administration. ECF No. 16 at 9. During her first year of employment, the Plaintiff avers that the Agency Defendant "considered [her] to be performing well," provided her with a "positive rating" at her midterm review and presented her with "accolades and awards" for her contributions to the workplace. ECF No. 16 at 7, 9.

In December of 2016, the Plaintiff lodged a complaint with the Merit Systems Protection Board ("MSPB") after she was not promoted to a position that she believed she was qualified for. ECF No. 16 at 10. Around this same time, the Plaintiff alleges that she also made a "protected disclosure concerning a safety Risk to the Safety Officer."

---

[3] When reviewing a motion to dismiss, the Court assumes that the Plaintiff's "well-pleaded factual allegations" are true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

ECF No. 16 at 11.  After these two incidents, the Plaintiff began to feel as though she was being retaliated against.  The Plaintiff asserts that the Agency Defendant "branded [her] as a troublemaker, specifically chastised [her] for making protected disclosures, and subjected [her] to retaliatory actions, including a less than deserved performance rating, placement under many investigations, reassignment away from clinical duties, discrimination, hostile environments, [and] unfair workloads."  ECF No. 16 at 9.  On December 27, 2016, the Plaintiff filed a complaint with the Office of Special Counsel, wherein she claimed that she was experiencing retaliation for her whistleblowing disclosures.  ECF No. 16 at 13, 17-18.

Next, on January 11, 2017, the Plaintiff lodged a complaint with the Chief Resident Dental Director, wherein she alleged that "Resident Dr. Patel had not worn sterile gloves during an oral surgery and exhibited poor patient care on a few occasions, to include the malpractice of unnecessarily removal of bone during a dental surgery extraction."  ECF No. 16 at 13.  A few weeks later, Dr. Patel submitted a complaint against the Plaintiff, and the Plaintiff was removed from her position on charges of abuse and neglect of a veteran. ECF No. 16 at 13.

Dr. Patel's complaint led to an Administrative Investigation Board (AIB) investigation into the Plaintiff.  Doyle v. Dep't of Veterans Affs., 855 F. App'x 753, 754 (Fed. Cir. 2021). [4]  Specifically, the AIB investigated whether the Plaintiff engaged in: (1)

---

[4] Pursuant to Fed. R. Evid. 201, the Court may take judicial notice of docket entries, pleadings, and papers in other cases. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting "the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records").  Indeed, there are multiple cases involving the Plaintiff and the Agency Defendant, Doyle v. Dep't of Veterans Affairs, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767 (March 19, 2019) ("Doyle I"); Doyle v. Dep't of Veterans Affairs, MPSB No. PH-1221-18-0012-W-3, 2019 WL 2745924 (June 29, 2019) ("Doyle II"); Stacie D., Petition No. 2020004671, 2020 WL 6710397 (Nov. 3, 2020); Doyle v. McDonough, No. CV ELH-20-3478, 2021 WL 4846938 (D. Md. Oct. 15, 2021); Doyle v. Dep't of Veterans Affairs, 855 F. App'x 753 (Fed.

"incidents of patient abuse, mistreatment or neglect;" (2) "violation of patient treatment procedures and protocols;" (3) "bullying, disrespectful, insulting, abusive, or obscene language or conduct;" and (4) "refusal to carry out supervisors' or physicians' orders or willful resistance to the same." Doyle, 855 F. App'x at 754.

In July of 2017, the AIB finalized its investigation into the Plaintiff's abuse and neglect charge and provided recommendations to the Agency Defendant. ECF No. 16 at 19. The AIB found "no credible evidence" as to the first three allegations, but the AIB found "minimal evidence that [the Plaintiff] may have refused to carry out supervisor or physician orders." Doyle, 855 F. App'x at 754. Notably, the AIB found that the Plaintiff's supervisor "may have orchestrated this AIB in an effort to get rid of [the Plaintiff] for personal reasons." Id. at 755. Ultimately, the AIB concluded that the investigation was retaliatory and manipulative. Id. The AIB recommended that the Plaintiff be considered for another position. Id.

Following the AIB recommendation, the Plaintiff identified an Executive Assistant position that she wished to be considered for and communicated so to the Chief of Human Resources. ECF No. 16 at 22. However, the Plaintiff was not selected and avers that this rejection was motivated by retaliation and discrimination. ECF No. 16 at 23. Instead, the Plaintiff was reassigned to her second choice position as an Advanced Medical Support Assistant ("AMSA") in September of 2017. ECF No. 16 at 24. As an AMSA, the Plaintiff worked in the "'Fishbowl'—a glass enclosed area with four MSAs handling the front counter and two MSAs in the back at the work table." Doyle I, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767.

---

Cir. 2021); Doyle v. Dep't of Veterans Affs., No. PH-1221-18-0012-M-1, 2021 WL 5994161 (Dec. 14, 2021) ("Doyle III").

6

When the Plaintiff began her new role, she attended the "MSA Academy," which was a "six-day (approximately) training course that instructs the new MSA to perform her basic duties." Id. However, the Plaintiff claims that her new supervisor "barely trained" her. ECF No. 16 at 46. Further, the Plaintiff alleges that the trainings were difficult to follow and that the trainings were conducted "in an open bay area, with a lot of commotion." ECF No. 16 at 47.

In October of 2017, the Plaintiff's supervisor spoke with her about an error the Plaintiff had made. Doyle I, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767. In response, the Plaintiff immediately requested a reasonable accommodation. Id. The Plaintiff's supervisor referred her to Human Resources to begin the accommodation process. Id. Around this time, the Plaintiff's supervisor contacted her own manager to seek advice regarding the Plaintiff's unsatisfactory work performance. Id. Soon thereafter, the Plaintiff was reassigned to work in a separate conference room on alternate projects. Id.

In November of 2017, the Plaintiff submitted a formal request to the Agency Defendant for a reasonable accommodation, seeking a "private office for a quieter workspace." Stacie D., Petition No. 2020004671, 2020 WL 6710397, at *1. However, the Plaintiff's first application for a reasonable accommodation was incomplete because she did not include a required form from her physician. Id. According to an email excerpt provided by the Plaintiff, her physician refused to fill out the form when she brought the form to him. ECF No. 16 at 26. In December of 2017 and May of 2018, the Agency Defendant submitted a request to the Plaintiff's doctor for a completed version of the form. Stacie D., Petition No. 2020004671, 2020 WL 6710397, at *5. The Agency Defendant

did not obtain the required paperwork to proceed with the Plaintiff's accommodation request until June 2018.  ECF No. 16 at 27.

At some point while working as an AMSA, the Plaintiff alleges that her supervisor discriminated against her on the basis of her religion.  ECF No. 16 at 35.  The crux of her claim centers on two comments.  The Plaintiff asserts that her supervisor told her that she "could not even say 'MERRY CHRISTMAS' or 'GOD BLESS YOU.'" ECF No. 16 at 35.  The Plaintiff claims that her supervisor informed her that this restriction was not a "VA policy," but rather her own policy.  ECF No. 16 at 35.

Additionally, the Plaintiff asserts that her supervisor also discriminated against her on the basis of her gender or sexual preference.  This claim centers around one event.  The Plaintiff explains that her supervisor required her to "enter annual leave" for time spent outside her allotted lunch break at an "EEO LGBT pride event."  ECF No. 16 at 35.  The Plaintiff believes that this instruction was discriminatory because "other employees [did] not have to put in leave" for similar circumstances.  In support, the Plaintiff describes two examples.  However, in her first example, the Plaintiff states that a colleague who attended her daughter's kindergarten orientation was told "to just put in leave whenever she got back."  ECF No. 16 at 35.  In the Plaintiff's second example, her colleague did not put in leave when she "went to pick up lunch for everyone." ECF No. 16 at 36.

In January of 2018, the Plaintiff's supervisor spoke with the Martinsburg VA Chief of Medicine about the Plaintiff's poor performance.  Doyle I, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767.  The Chief of Medicine recommended that the Plaintiff "attend the MSA academy a second time in early 2018."  Id.  However, even after attending this training, the Plaintiff's performance did not improve, according to testimony provided to

8

the MSPB.  Id.  The Plaintiff's supervisor described the Plaintiff as "the most heavily trained MSA ever," but the Plaintiff still "could not perform her duties adequately." Id. Moreover, the Plaintiff's supervisor testified that "[w]hile all MSAs made mistakes, [the Plaintiff's] were more frequent, repeated, and often more serious." Id.

In April of 2018, the Agency Defendant's Chief of Medicine formally proposed the Plaintiff's termination, after she failed to improve upon additional training.  Id.  The Plaintiff received a proposed removal notice, which cited repeated instances of failure to maintain a successful level of achievement; repeated instances of failure to follow procedures; repeated instances of failure to follow instructions; repeated instances of conduct unbecoming; and one instance of failure to use the correct title block as reasons for her termination.  Id.  Shortly thereafter, the Plaintiff was removed from the AMSA "fishbowl" area and assigned to the role of a greeter at a kiosk area due to concerns that she was improperly printing and keeping patient information.  Stacie D., Petition No. 2020004671, 2020 WL 6710397, at *1.  The Plaintiff remained in this position until she was formally terminated in September of 2018.  Doyle I, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767.

On June 13, 2018, the Plaintiff submitted a complete accommodation request. Stacie D., Petition No. 2020004671, 2020 WL 6710397, at *2.  In her application, the Plaintiff "requested a private office for a quieter workspace and noted that she required reduced noise and distractions to improve her focus and concentration." Id.  The Plaintiff lists her disability as ADHD.  ECF No. 16 at 7.  The Plaintiff's physician confirmed in the application that the Plaintiff "had difficulty concentrating on detailed work and could not

perform with any significant distractions." Stacie D., Petition No. 2020004671, 2020 WL 6710397, at *2.

In July of 2018, the Plaintiff was allowed to "use a conference room for morning break/computer time, lunch, and afternoon break/computer time," as an accommodation for her disability. Id. However, because of the Plaintiff's recent reassignment as a greeter, Human Resources could not identify any tasks at the kiosk "that would provide privacy, less noise, and less distraction." Id. The Plaintiff refused an accommodation of wearing earbuds or having a partition constructed at the kiosk. Id. The Plaintiff did agree that the time she spent working in the conference room "was relatively quieter . . . it was not like being in the open MSA area or standing at the kiosk." Id. Given the interactive duties of both an AMSA and a greeter, Human Resources was ultimately unsure how to handle the Plaintiff's accommodation request. Id.

On September 20, 2018, the Plaintiff was formally terminated. Id. The Plaintiff then appealed her termination to the MSPB, arguing that her removal was in retaliation for her whistleblowing activity and that the Agency discriminated against her based upon her disability. See Doyle I, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767. The Plaintiff's case was severed into two appeals before the MSPB.[5]

In regard to the Plaintiff's argument that she was terminated in retaliation for her whistleblowing activity, the MSPB Administrative Law Judge determined that "there was

_____

[5] The MSPB Administrative Law Judge described the distinction between the Plaintiff's two cases as follows:
   Doyle 1 pertained to the appellant's removal and included a defense of whistleblower retaliation. As to the affirmative defense, the appellant challenged various agency actions/incidents . . . as evidence of retaliatory animus, including arguable personnel actions that could not be addressed as retaliatory personnel actions in the context of removal . . . In Doyle 2, the appellant had the opportunity to challenge these actions/incidents as retaliatory personnel actions under the broader jurisdiction of the IRA appeal.
Doyle II, MPSB No. PH-1221-18-0012-W-3, 2019 WL 2745924.

10

ample evidence that the Agency's action was not retaliatory." Id.  Instead, the Plaintiff's proposed removal was based on seven separate charges: (1)  failure to maintain a successful level of achievement in administrative work, supported by four specific violations, (2) failure to maintain a successful level of achievement in scheduling work, supported by seven violations, (3) failure to maintain a successful level of achievement in CPRS/documentation, supported by five specific violations, (4) failure to follow procedures, supported by three specific violations, (5) failure to follow instructions, supported by eleven specific violations, (6) conduct unbecoming, supported by eleven specific violations and (7) failure to use the correct title block, supported by one specific violation.  Id.

In regards to the Plaintiff's claim of disability discrimination, the MSPB found that there existed "no dispute that the appellant has a disability (Attention Deficit Disorder (ADD))."  Id.  However, the MSPB also found that neither party disputed that the Agency Defendant did engage in the interactive accommodation process.  Id.  Instead, the MSPB identified "the bigger issues [as] whether the appellant actually needed an accommodation and whether she showed one existed."  Id.  The Plaintiff testified  "that the fast paced and chaotic MSA environment was the real problem," but the Plaintiff "previously conceded that she knew the MSA Job was in a busy and chaotic environment."  Id.  Further, the Plaintiff repeatedly testified "that her problems came from the hostile and overbearing way that she was being treated."  Id.  The MSPB found her complaints to focus more on the individuals she worked with as opposed to the nature of her duties.  Id.

11

Moreover, the MSPB could not identify a "viable accommodation" that "would allow [the Plaintiff] to perform the essential function of her job." Id.  The Plaintiff requested "a private office away from noise and distractions," which the MSPB found "at odds with the world of an MSA." Id.  Moreover, even when provided private office space, the Plaintiff "still complained about noises and people walking by" and failed to complete her AMSA duties when in the office. Id.  Lastly, the Plaintiff testified "that she did not know what the essential functions" of an AMSA's job were. Id.  Ultimately, the MSPB found that the Agency Defendant did not discriminate against the Plaintiff based on her disability and upheld the Agency Defendant's termination of the Plaintiff.

On April 3, 2019, the Plaintiff appealed the MSPB's decision to the Equal Employment Opportunity Commission (EEOC).  Stacie D., Petition No. 2020004671, 2020 WL 6710397, at *2.  However, the Plaintiff only requested review of her disability discrimination claim, so the EEOC only reviewed the MSPB's decision to determine whether the Plaintiff had indeed failed to establish her affirmative defense of failure to accommodate as it pertained to her termination. Id.  The Plaintiff argued that the Agency Defendant "ignored her verbal request for accommodation" and "ignored her inquiries regarding her request in December 2017." Id. at *3.  The Plaintiff further argued that when "she was presented with the charges requesting her removal for poor job performance in April 2018, the Agency had not acted on her accommodation request." Id. at *3.

The EEOC affirmed the MSPB's finding that the Plaintiff was an individual with a disability covered by the Rehabilitation Act. Id. at *5.  The EEOC found that the Plaintiff "failed to establish that she was a *qualified* individual with a disability because there is no evidence in the record that the [Plaintiff] could perform the essential functions of her

12

position with or without reasonable accommodation." Id.  The EEOC noted that the Plaintiff had "failed to identify a reasonable accommodation that would enable her to perform the essential functions of her position." Id.  Ultimately, the EEOC found that the Agency had legitimate, nondiscriminatory reasons for her removal, supported by "multiple instances of poor performance, failure to follow instructions, and misconduct." Id.

In June of 2019, the Plaintiff appeared before the MSPB again (Doyle II), requesting corrective action of personnel actions taken by the Agency Defendant. No. PH-1221-18-0012-W-3, 2019 WL 2745924.  The MSPB found that the Plaintiff had made at least some protected whistleblower disclosures and that the Agency Defendant had "a slight motive to retaliate" against her. Id.  Nonetheless, the MSPB found that the Plaintiff had failed to show that, but for her whistleblowing activity, the Agency would not have taken these same actions.  Id.

The Plaintiff appealed Doyle II to the U.S. Court of Appeals for the Federal Circuit, challenging the MSPB's resolutions of four of the ten alleged adverse personnel actions. On May 14, 2021, the Federal Circuit reversed the MSPB.  Doyle, 855 F. App'x at 762. The Federal Circuit found that the "evidence establishes that the AIB investigation was retaliatory, either on its own or as part of a broader set of circumstances." Id. at 759.  The Federal Circuit further found that the Agency Defendant "fail[ed] to prove by clear and convincing evidence that it would have taken the same adverse personnel action against a similarly situated employee absent protected disclosures by that employee." Id. at 762. Ultimately, the Federal Circuit reversed the MSPB's decision in Doyle II, awarded costs

to the Plaintiff and remanded the Plaintiff's appeal back to the MSPB. On December 14, 2021, the MSPB granted the Plaintiff's request for corrective action.[6]

## II.    LEGAL STANDARDS
### A. Standard of Review

While the Court of Appeals for the Federal Circuit has jurisdiction over review of decisions made by the MSPB concerning claims of adverse federal personnel actions, a federal district court may nonetheless review MSPB decisions in cases where the plaintiff has also raised a claim of discrimination or retaliation. See Afifi v. U.S. Dep't of Interior, 924 F.2d 61, 62-63 (4th Cir.1991) ("When it created the Federal Circuit, Congress vested the court with exclusive jurisdiction to hear appeals from final orders of the MSPB in federal personnel matters. 28 U.S.C. § 1295(a)(9). However, . . . Title 5 U.S.C. § 7703(b)(2) requires that all claims of discrimination under the Civil Rights Acts, Age Discrimination in Employment Act, or Fair Labor Standards Act be filed in the appropriate district court."). In a "mixed case," one where the plaintiff challenges an action that allows her to seek review before both the MSPB and the EEOC, the plaintiff must file suit in the appropriate federal district court, rather than the Federal Circuit, following issuance of the final MSPB and EEOC decisions. Id.; ECF No. 40-1 at 58.

However, in a mixed case, it is important to note that the standard of review for claims of discrimination differs significantly from the standard applicable to any non-

---

[6] In line with the Federal Circuit's findings, the MSPB found that the Agency Defendant "failed to establish by clear and convincing evidence that it would have convened the AIB investigation and subsequently reassigned the appellant to the [AMSA] position . . . in the absence of her protected activity/disclosures." Doyle v. Dep't of Veterans Affs., No. PH-1221-18-0012-M-1, 2021 WL 5994161 (Dec. 14, 2021) ("Doyle III"). The MSPB ordered the Agency Defendant to cancel the Plaintiff's reassignments, to remove and expunge any documents that reference the Plaintiff's reassignments and to expunge records associated with the AIB. Id. Further, the decision ordered the Defendant Agency to "pay any monies or provide any other awards owed as a result of the retaliatory actions." Id. The MSPB noted that this decision "is the first decision issued by the Board ordering corrective action." Id.

discrimination claims raised therein.  Specifically, a district court must conduct a de novo review of any claims of discrimination previously presented before the EEOC, while review of any non-discrimination claims presented before the MSPB is limited to the administrative record and is thus subject to a more deferential standard established by statute.  Luther v. Gutierrez, 618 F. Supp. 2d 483, 489 (E.D. Va. 2009); see 5 U.S.C. § 7703(c)(3).

Although the conclusions of the MSPB and EEOC regarding discrimination are not entitled to deference from the Court, de novo review is not an invitation for the Court to sit "as a kind of super-personnel department weighing the prudence of employment decisions." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998).  Instead, as in other employment discrimination contexts, a court's task is to assess the employment decision from the perspective of the employer at the time the decision was made. Id. at 298-99 ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." (internal quotation marks omitted)).

"[R]eview of any non-discrimination claims presented before the MSPB is limited to the administrative record and is thus subject to a [ ] deferential standard established by statute." Luther, 618 F. Supp. 2d at 490 (citing § 7703(c)).  The statutory standards require that an MSPB decision pertaining to non-discrimination claims be set aside only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." § 7703(c).  The "arbitrary and

capricious standard is extremely narrow, and allows the Board wide latitude." U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7 (2001). A court should not "substitute its own judgment for that of the Board." Id. at 7.  Further, "[s]ubstantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Consol Buchanan Mining Co., LLC v. Sec'y of Labor, 841 F.3d 642, 647 (4th Cir. 2016), as amended (Nov. 23, 2016) (quoting Almy v. Sebelius, 679 F.3d 297, 301 (4th Cir. 2012)).  Lastly, and significantly, "[t]he burden is on the appellant to prove [such] arbitrariness or capriciousness, procedural impropriety, or lack of substantial evidence." Monk v. Potter, 723 F. Supp. 2d 860, 873 (E.D. Va. 2010) (second alteration in original) (quoting Harris v. Dep't of Vet. Aff., 142 F.3d 1463, 1467 (Fed. Cir. 1998)).

## B. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the pleading standard under Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

16

When reviewing a Rule 12(b)(6) motion, the court assumes that the complaint's well-pleaded allegations are true, resolves all doubts and inferences in favor of the plaintiff and views the allegations in a light most favorable to the plaintiff.  Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999).  Only factual allegations receive the presumption of truth.  Iqbal, 556 U.S. at 678-79.  A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic" and facts subject to judicial notice under Federal Rule of Evidence 201.  Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

*Pro se* complaints are subject to this standard as well.  "When reviewing a *pro se* complaint, federal courts should examine carefully the plaintiff's factual allegations, no matter how inartfully pleaded, to determine whether they could provide a basis for relief." Armstrong v. Rolm A. Siemans Co., 129 F.3d 1258, at *1 (4th Cir. 1997) (citing to Gordon v. Leake, 574 F.2d 1147, 1151 (4th Cir. 1977)).  It is also appropriate for federal courts to look beyond the face of the complaint to allegations made in additional materials filed by the *pro se* plaintiff when determining whether a motion to dismiss should be granted.  Id.

### C.  Rehabilitation Act

The Rehabilitation Act prohibits federal agencies from discriminating against qualified employees based on a disability, and it provides the exclusive avenue for remedying such discrimination.  See 29 U.S.C. § 791, 794(a).  The Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."  Id. § 794(a).  A

17

plaintiff alleging violations of the Rehabilitation Act may prove her case by using either direct or circumstantial evidence of discrimination or the burden-shifting approach under the McDonnell Douglas "pretext" framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Luther, 618 F. Supp. 2d at 491-93 (applying McDonnell Douglas to a Rehabilitation Act claim).

Under McDonnell Douglas, a plaintiff must first state a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802.  To state a prima facie claim of failure to accommodate under the Rehabilitation Act, "a plaintiff must demonstrate that (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation."  Hannah P. v. Coats, 916 F.3d 327, 337 (4th Cir. 2019).  If the plaintiff establishes a prima facie case, the defendant may then rebut the presumption of discrimination or retaliation by providing a legitimate, non-discriminatory or nonretaliatory reason for the challenged employment action or disparate treatment.  See McDonnell Douglas, 411 U.S. at 802, n.13.  If the defendant can provide a legitimate non-discriminatory reason for the challenged employment action, the burden then shifts back to the plaintiff to produce some evidence showing that the employer's legitimate reason for its actions was indeed pretextual.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

### D.  Title VII

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin.  See 42 U.S.C. § 2000e-2(a)(1). It is well established that prior to filing a Title VII lawsuit, a plaintiff must first exhaust any

available administrative remedies.  Lewis v. City of Chicago, Ill., 560 U.S. 205, 210 (2010); see also 42 U.S.C. § 2000e-5(e)(1).  A plaintiff's failure to exhaust available administrative remedies deprives federal courts of subject matter jurisdiction over the Title VII claim. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

Generally, an exhaustion of remedies concerning a Title VII claim involves filing an administrative charge with the EEOC.  The scope of future litigation is framed by this EEOC charge.  Chacko v. Patuxent Institution, 429 F.3d 505, 506 (4th Cir. 2005).  "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII law suit."  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) (stating "[a] plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit.").

### III.    DISCUSSION

Despite the convoluted history of the Plaintiff's employment-related litigation, only a few issues remain for this Court to review.  First, this Court will conduct a de novo review of the Plaintiff's claim that the Agency Defendant failed to provide her with a reasonable accommodation as required under the Rehabilitation Act.  The Court will then review the sufficiency of the Plaintiff's amended complaint as it pertains to her remaining claims. Lastly, the Court will adjudicate the remaining motions filed by the Plaintiff.

### A.  Rehabilitation Act Claim

In her amended complaint, the Plaintiff requests that this Court review an EEOC and MSPB decision pertaining to the context of her employment termination.  However, because the Plaintiff only appealed her claim regarding disability discrimination to the

19

EEOC, that is the only claim that the Court must review de novo.  Luther, 618 F. Supp. 2d at 489 (stating that a district court must conduct a de novo review of any claims of discrimination previously presented before the EEOC). To state a prima facie claim of failure to accommodate under the Rehabilitation Act, "a plaintiff must demonstrate that (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." Hannah P., 916 F.3d at 337. The Plaintiff must satisfy each of the four elements.

Here, the Court finds that the Plaintiff has failed to satisfy each of the four elements needed to sufficiently allege a prima facie claim under the Rehabilitation Act.  Most notably, the Plaintiff has not shown that she could perform the essential functions of her position with a reasonable accommodation or that the Agency Defendant refused to accommodate her.  At the time the Plaintiff requested a reasonable accommodation, she was assigned to the role of an AMSA.  The Court finds that there is ample evidence that the Plaintiff could not perform the duties of an AMSA with her requested accommodation.

Indeed, her requested accommodation is at odds with the crux of the role of an AMSA.  AMSAs are situated together in a "fishbowl" area, and the majority of AMSAs work in an interactive, front desk role.  However, the Plaintiff requested an accommodation of a quiet, private office.  This Court, much like the Agency Defendant's Human Resources Department and the MSPB, struggles to reconcile how the Plaintiff's requested accommodation would assist her in completing her duties as an AMSA.

Further, despite attending the AMSA academy twice, the Plaintiff testified at her MSPB hearing that she did not know what the essential functions of an AMSA were, which may explain why her requested accommodation did not set her up for success in her role. Doyle I, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767. The Plaintiff's supervisor described the Plaintiff as "the most heavily trained MSA ever," but remarked that the Plaintiff "still could not perform her duties adequately." Id.  Indeed, by the time of the Plaintiff's termination, the Agency Defendant cited over forty errors as reasons for the Plaintiff's termination. Id.

Nevertheless, despite the tension between the Plaintiff's role and her requested accommodation, the Agency Defendant did indeed accommodate the Plaintiff.  While there was a long temporal gap between when the Plaintiff first raised an accommodation request and when the Plaintiff received an accommodation, the Court does not find that the circumstances can be construed as a refusal on the part of the Agency Defendant. The Plaintiff initially submitted an incomplete accommodation request, one lacking in supporting documentation from her physician, a significant part of the application. According to an email excerpt provided by the Plaintiff, her physician refused to fill out the form when she brought the form to him.  ECF No. 16 at 26.  The Agency Defendant twice requested the pertinent medical information from the Plaintiff's physician, once in December 2017 and again in May 2018.  It was not until the Plaintiff resubmitted her application in June of 2018 did she provide the necessary medical documentation.

The following month, the Agency Defendant allowed the Plaintiff to "use a conference room for morning break/computer time, lunch, and afternoon break/computer time," as an accommodation for her disability.  Stacie D., 2020 WL 6710397, at *2.

21

However, because of the Plaintiff's recent reassignment as a greeter, Human Resources could not identify any tasks at the kiosk "that would provide privacy, less noise, and less distraction," and the Plaintiff refused an accommodation of wearing earbuds or having a partition constructed.  Id.  The Plaintiff did agree that the time she spent working in the conference room "was relatively quieter ... it was not like being in the open MSA area or standing at the kiosk." Id.  Still, even when provided private office space, the Plaintiff "complained about noises and people walking by" and failed to complete her AMSA duties when in the office.  Id.

Therefore, the Court finds that the Plaintiff has failed to show that she could perform the essential functions of her position with a reasonable accommodation or that the Agency Defendant refused to make an accommodation.  The Plaintiff received the accommodation she requested, yet she remained unsatisfied and failed to complete her assigned duties.  Because the Plaintiff cannot satisfy two of the four essential elements needed to allege a prima facie case of discrimination, the Court finds that she has failed to state a claim under the Rehabilitation Act.  Accordingly, the Court upholds the MSPB's finding that the Plaintiff failed to show that the Agency Defendant discriminated against her based upon her disability, Doyle I, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767, and the Plaintiff's disability discrimination claim is **DISMISSED**.

### B.  Defendant's Motions to Dismiss

As the Court has already addressed the Plaintiff's Rehabilitation Act claim above, the Court will address the Defendant's corrected motion to dismiss as it pertains to the Plaintiff's Title VII and whistleblower claims.   For the reasons that follow, the Court will **GRANT** the Defendant's corrected motion to dismiss [ECF No. 77].  Further, because the

22

Agency Defendant's corrected motion supplants its initial motion, the Court will **TERMINATE as MOOT** the Agency Defendant's initial motion to dismiss [ECF No. 67].

### 1. Title VII Claim

In her amended complaint, the Plaintiff asserts that she was discriminated against based on her religion and gender or sexual preference.  It is well established that prior to filing a Title VII lawsuit, a plaintiff must first exhaust any available administrative remedies. Lewis, 560 U.S. at 210; see also 42 U.S.C. § 2000e-5(e)(1).  Generally, an exhaustion of remedies concerning a Title VII claim involves filing an administrative charge with the EEOC; the scope of future litigation is framed by this EEOC charge. See Chacko, 429 F.3d at 506.  A plaintiff's failure to exhaust available administrative remedies deprives a federal court of subject matter jurisdiction over the Title VII claim. Jones, 551 F.3d at 300.

Here, the Court finds no evidence that the Plaintiff raised any claim of discrimination based on her religion or gender/sexual preference in either her initial complaint to the Office of Special Counsel, her MSPB appeal or her EEOC appeal. Because the Plaintiff raised claims of racial and gender/sexual preference discrimination for the first time in this civil action, the Court finds that the Plaintiff has failed to exhaust the administrative remedies available to her for these claims.  Therefore, the Court is without subject matter jurisdiction to adjudicate either of the Plaintiff's Title VII claims. Accordingly, the Plaintiff's Title VII claims before this Court are **DISMISSED**.

### 2. Whistleblower Claim

Claims involving whistleblower status are a common thread in both Doyle I and Doyle II.  However, the Plaintiff's whistleblower claims regarding the Agency Defendant's convening of the AIB and the resulting reassignment of Plaintiff to other positions within the VA, as raised in Doyle II, are not before this Court.  The Plaintiff appealed the MSPB's

23

decision in <u>Doyle II</u> to the U.S. Court of Appeals for the Federal Circuit, which is the appropriate jurisdiction.   28 U.S.C. § 1295(a)(9).

On May 14, 2021, the Federal Circuit reversed the MSPB's decision and remanded the Plaintiff's appeal.   <u>Doyle</u>, 855 F. App'x 753. On December 14, 2021, the MSPB entered an order resolving the Plaintiff's claims in her favor, and the parties are now litigating damages in that case.   ECF No. 68-1 at 4.   To the extent that the Plaintiff is attempting to re-litigate the claims of <u>Doyle II</u> again here, her claims dismissed as moot. <u>See</u> <u>Comm'r v. Sunnen</u>, 333 U.S. 591, 597 (1948) (holding that "when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound"); <u>Afifi</u>, 924 F.2d at 62 (stating that the Federal Circuit holds "exclusive jurisdiction to hear appeals from final orders of the MSPB in federal personnel matters" (citing 28 U.S.C. § 1295(a)(9)).

Remaining before the Court is the Plaintiff's whistleblower claim as it pertains to her termination, as set forth in <u>Doyle I</u>.   However, unlike the Plaintiff's disability discrimination claim above, the Court may only conduct a narrow review of the MSPB's adjudication of this claim.   <u>Luther</u>, 618 F. Supp. 2d at 490 ("[R]eview of any non-discrimination claims presented before the MSPB is limited to the administrative record and is thus subject to a [ ] deferential standard established by statute." (citing 5 U.S.C. § 7703(c))).   The statutory standards allow a court to set aside an MSPB decision only if the decision was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

In adjudicating the Plaintiff's claim, the MSPB conducted a two-day hearing, during which six witnesses, including the Plaintiff herself, testified. Doyle I, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767. Both parties before the MSPB submitted voluminous materials in support. Id. The Court finds that the administrative record is replete with substantial evidence supporting the Agency Defendant's decision to terminate the Plaintiff's employment.

The Plaintiff's removal was based on seven separate charges: (1) failure to maintain a successful level of achievement in administrative work, supported by four specific violations, (2) failure to maintain a successful level of achievement in scheduling work, supported by seven violations, (3) failure to maintain a successful level of achievement in CPRS/documentation, supported by five specific violations, (4) failure to follow procedures, supported by three specific violations, (5) failure to follow instructions, supported by eleven specific violations, (6) conduct unbecoming, supported by eleven specific violations and (7) failure to use the correct title block, supported by one specific violation. Cumulatively, the Agency Defendant had over forty specific violations supporting its decision to terminate the Plaintiff's employment. It follows that the MSPB's reliance on this evidence provided substantial support for its decision to uphold the Agency Defendant's decision to terminate the Plaintiff's employment.

Given the substantial evidence, the Court finds that the MSPB's decision to uphold the Plaintiff's termination was not arbitrary, capricious, or an abuse of discretion. Additionally, the decision is in accordance with the law. Accordingly, the Court upholds the MSPB's finding that the Plaintiff failed to show that the Agency Defendant terminated

her employment in retaliation for her whistleblower activity, <u>Doyle I</u>, MSPB No. PH-0714-18-0483-I-1, 2019 WL 1315767, and the Plaintiff's whistleblower claim is **DISMISSED**.

### C. Plaintiff's Motion to Attach Supplemental Exhibits

The Plaintiff submitted a filing titled "Motion to Add Initial Decision from US Merit Systems Protection Board." ECF No. 68.  Therein, the Plaintiff asks the Court to accept the December 14, 2021, MSPB decision, <u>Doyle v. Dep't of Veterans Affs.</u>, MSPB No. PH-1221-18-0012-M-1, 2021 WL 5994161 (Dec. 14, 2021), granting the Plaintiff's requested corrective action. The Plaintiff does not further elaborate as to the purpose of the motion. As discussed above, the claims presented in the <u>Doyle II</u> litigation stream are not before this Court.

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of docket entries, pleadings, and papers in other cases. <u>See</u> <u>Colonial Penn Ins. Co. v. Coil</u>, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting "the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records").  If the Court needs to rely on information presented in the MSPB's December 2021 decision, it may do so on its own accord.  Accordingly, the Court **DENIES as MOOT** the Plaintiff's motion to add.

### D. Plaintiff's Third Motion to Appoint Counsel

Also pending before the Court is the Plaintiff's Third Motion to Appoint Counsel. ECF No. 72.  Therein, the Plaintiff describes how she previously secured representation and spent over $60,000 on attorney's fees.  The Plaintiff does not explain why or when the representation ended, but to the Court's knowledge, the Plaintiff has proceeded in this civil action *pro se* since the initial complaint was first filed in the District of Maryland.  The Plaintiff does not further elaborate as to why she requires appointed counsel.

An indigent litigant generally has no right to appointed counsel.  See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975).  Pursuant to 28 U.S.C. § 1915(e)(1), federal courts are empowered to appoint counsel to represent an indigent litigant in a civil action.  However, a court's power to appoint counsel in these circumstances is discretionary and should be exercised "only in exceptional cases."  See id.  "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant."  Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for S. Dist. of Iowa, 490 U.S. 296 (1989).  Further, "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him."  Id. (quoting Gordon v. Leeke, 574 F.2d 1147, 1173 (4th Cir. 1978)).

In the instant case, the Court finds that the Plaintiff has not shown a particular need or exceptional circumstances that would require the appointment of counsel.  Therefore, the Court finds that appointment of counsel is not warranted, and the Plaintiff's Third Motion to Appoint Counsel [ECF No. 72] is hereby **DENIED**.

## IV.    CONCLUSION

For the aforementioned reasons, the Court **ORDERS** that the Defendant's Corrected Motion to Dismiss [ECF No. 77] is **GRANTED** and the Defendant's initial Motion to Dismiss [ECF No. 67] is **TERMINATED as MOOT**.  It is further **ORDERED** that the *pro se* Plaintiff's Motion to Add Initial Decision from US Merit Systems Protection Board [ECF No. 66] is **DENIED as MOOT** and the Plaintiff's Third Motion to Appoint Counsel [ECF No. 72] is **DENIED**.  The Plaintiff's Amended Complaint [ECF No. 16] is **DISMISSED WITH PREJUDICE**.

Accordingly, the Clerk of Court is **DIRECTED** to **STRIKE** this case from the Court's active docket.

The Clerk is **FURTHER DIRECTED** to transmit a copy of this Order to all counsel of record herein and to the *pro se* Plaintiff by certified mail, return receipt requested, at her last known address as reflected in the docket sheet.

**DATED**: August 24, 2022

GINA M. GROH
UNITED STATES DISTRICT JUDGE